481 F.3d 110
 Paul BELLIKOFF, individually and on behalf of all others similarly situated, John B. Perkins, individually and on behalf of all others similarly situated,
Stephen R. Alexander and Rita Silvermetz, Plaintiffs-Appellants,
Marvin Goldfarb, Phyllis Ann Jaffee Revocable Trust and Igor Lukashevich, individually and on behalf of all others similarly situated, Consolidated-Plaintiffs-Appellants,
v.
EATON VANCE CORP., Eaton Vance Management, Boston Management and Research, Lloyd George Investment Management Limited, Jessica M. Bibliowicz, James B. Hawkes, Samuel L. Hayes, III, William H. Park, Ronald A. Pearlman, Norton H. Reamer, Lynn A. Stout, John Does 1-100, Eaton Vance Tax-Managed Small Cap Growth Fund 1., Eaton Vance Tax-Managed Small Cap Growth Fund 1.1, Eaton Vance Tax-Managed Small Cap Growth Fund 1.0, Eaton Vance Tax-Managed Dividend Income Fund, Eaton Vance Tax-Managed Equity Asset Allocation, Eaton Vance Tax-Managed International Growth Fund, Eaton Vance Tax-Managed Mid-Cap Core Fund, Eaton Vance Tax-Managed Multi Cap Opportunity Fund, Eaton Vance Tax-Managed Small Cap Growth Fund 1., Eaton Vance Tax-Managed Small Cap Value Fund, Eaton Vance Tax-Managed Value Fund, Eaton Vance Balanced Fund, Eaton Vance Growth Fund, Eaton Vance Large Cap Core Fund, Eaton Vance Atlanta Cap Large Cap Fund, Eaton Vance Large Cap Value Fund, Eaton Vance Atlanta Cap Small Cap Fund, Eaton Vance Small Cap Growth Fund, Eaton Vance Small Cap Value Fund, Eaton Vance Special Equities Fund, Eaton Vance Utilities Fund, Eaton Vance Asian Small Companies Fund, Eaton Vance Emerging Markets Fund, Eaton Vance Greater China Growth Fund, Eaton Vance Greater India Fund, Eaton Vance Global Growth Fund, Eaton Vance Worldwide Health Science Fund, Eaton Vance Advisors Senior Floating-Rate Fund, Eaton Vance Atlanta Capital Intermediate Bond Fund, Eaton Vance Classic Senior Rate Fund, Eaton Vance Floating Rate Fund, Eaton Vance Floating Rate High Income Fund, Eaton Vance Government Obligations Fund, Eaton Vance High Income Fund, Eaton Vance Income Fund of Boston, Eaton Vance Institutional Senior Floating-Rate Fund, Eaton Vance Low Duration Fund, Eaton Vance Prime Rate Reserves, Eaton Vance Strategic Income Fund, Eaton Vance High Yield Municipals Fund, Eaton Vance Municipals Bond Fund, Eaton Vance National Limited Maturity Municipals, Eaton Vance National Municipals Fund, Eaton Vance Alabama Municipals Fund, Eaton Vance Arizona Municipals Fund, Eaton Vance Arkansas Municipals Fund, Eaton Vance California Limited Maturity Municipals Fund, Eaton Vance California Municipals Fund, Eaton Vance Colorado Municipals Fund, Eaton Vance Connecticut Municipals Fund, Eaton Vance Florida Insured Municipals Fund, Eaton Vance Florida Limited Maturity Municipals Fund, Eaton Vance Florida Municipals Fund, Eaton Vance Georgia Municipals Fund, Eaton Vance Hawaii Municipals Fund, Eaton Vance Kansas Municipals Fund, Eaton Vance Kentucky Municipals Fund, Eaton Vance Louisiana Municipals Fund, Eaton Vance Maryland Municipals Fund, Eaton Vance Massachusetts Fund, Eaton Vance Massachusetts Limited Maturity Municipals Fund, Eaton Vance Michigan Municipals Fund, Eaton Vance Minnesota Municipals Fund,
Eaton Vance Mississippi Municipals Fund, Eaton Vance Missouri Municipals Fund, Eaton Vance New Jersey Limited Maturity Municipals Fund, Eaton Vance New Jersey Municipals Fund, Eaton Vance New York Limited Maturity Municipals Fund, Eaton Vance New York Municipals Fund, Eaton Vance North Carolina Municipals Fund, Eaton Vance Ohio Limited Maturity Municipals Fund, Eaton Vance Ohio Municipals Fund, Eaton Vance Oregon Municipals Fund, Eaton Vance Pennsylvania Limited Maturity Municipals Fund, Eaton Vance Pennsylvania Municipals Fund, Eaton Vance Rhode Island Municipals Fund, Eaton Vance South Carolina Municipals Fund, Eaton Vance Tennessee Municipals Fund, Eaton Vance Virginia Municipals Fund, Eaton Vance West Virginia Municipals Fund, Orbimed Advisors, LLC, Jack L. Treynor, Donald Dwight, Edward Smiley, Payson F. Swaffield, Michael W. Weilheimer, Scott Page, Detective William Ahern, Duncan W. Richardson, Robert B. Macintosh, Cynthia A. Clemson, Judith Saryan, Michael R. Mach, Thomas J. Fetter, Thomas E. Faust, Eaton Vance Distributors, Inc. and Eaton Vance, Inc., Defendants-Appellees.
Docket No. 05-6957-cv.
 United States Court of Appeals, Second Circuit.
 Argued: November 20, 2006.
 Decided: March 15, 2007.
 
 Jerome M. Congress, Milberg Weiss Bershad & Schulman LLP, New York, NY, (Janine L. Pollack on the brief), for Plaintiffs-Appellants.
 Charles Lee Eisen, Kirkpatrick & Lockhart Nicholson Graham LLP, Washington, D.C., (Jeffrey B. Maletta, Nicholas G. Terris, and Shanda N. Hastings on the brief), for Defendants-Appellees.
 Before McLAUGHLIN, HALL, Circuit Judges, and GLEESON, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiffs in this case are a group of investors in various Eaton Vance mutual funds. They brought this putative class action in the United States District Court for the Southern District of New York (Koeltl, J.) to recover for wrongs they allege to have suffered at the hands of the Eaton Vance corporate empire and several affiliated entities.
 
 
 2
 The vehicle chosen to right these perceived wrongs was the Investment Company Act of 1940 (the "ICA"), which, for all of its protections, does little for the plaintiffs in this case. On appeal, we are principally concerned with whether there are implied private rights of action under sections 34(b), 36(a), and 48(a) of the ICA. We hold that there are not.
 
 BACKGROUND
 
 3
 This appeal arises from the dismissal of a putative class action suit brought against Eaton Vance mutual funds and myriad associated entities.[1] Together, the defendants are responsible for marketing, managing, and distributing shares of various Eaton Vance mutual funds. The suit was brought on behalf of all persons who held shares in any Eaton Vance fund between January 30, 1999 and November 17, 2003.
 
 
 4
 Plaintiffs allege that during this roughly four-year time span the defendants siphoned funds from Eaton Vance mutual funds to pay kickbacks to brokers who agreed to promote the sale of fund shares. Plaintiffs further allege that the expansion in fund assets — resulting from increased broker enthusiasm generated by the alleged kickbacks — increased the advisory fees paid to the Investment Advisor and Distributor Defendants, while providing no benefits to the funds or the fund investors. Finally, the plaintiffs argue that the advisory fees were disproportionate to the value of services provided and were outside the bounds of what would have been negotiated at arm's length.
 
 
 5
 To no small extent, the plaintiffs' claims rest upon the notion that the benefits of certain "economies of scale" were not passed along to shareholders. Specifically, the defendants orchestrated arguably improper "shelf-space" payment schemes with brokers such as Morgan Stanley, Salomon Smith Barney, and Wachovia. The plaintiffs contend that these arrangements included: (1) cash payments to brokers in return for the brokers' agreement to promote sales of fund shares; (2) directing fund portfolio brokerage to brokers in return for agreements by the brokers to promote the funds (a practice known as "directed brokerage"); and (3) excessive commission arrangements with brokers.
 
 
 6
 The engine driving this misbehavior was the fees paid to the Investment Advisor and Distributor Defendants, which were calculated as a percentage of assets under management. Thus, as more investors were drawn to the funds through these arguably nefarious business practices, the fees paid to various defendants mushroomed.
 
 
 7
 The conduct in question had already raised eyebrows at the Securities and Exchange Commission ("SEC") before the complaint in this matter was filed. Indeed, on November 17, 2003, the SEC and the National Association of Securities Dealers ("NASD") fined and sanctioned Morgan Stanley for accepting impermissible payments from the defendants here in exchange for aggressively pushing Eaton Vance funds over other comparable investment options. The SEC explained that "[t]his matter arises from Morgan Stanley DW's failure to disclose adequately certain material facts to its customers . . . [namely that] it collected from a select group of mutual fund complexes amounts in excess of standard sales loads and Rule 12b-1 trail payments." In re Morgan Stanley DW, Inc., Exchange Act Release No. 48,789, available at http://www.sec.gov/litigation/admin/33-8339.htm. The SEC concluded that this conduct violated Section 17(a)(2) of the Securities Act of 1933, which prohibits a broker from obtaining money or property "by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading."
 
 
 8
 Smelling blood in the water, five investors then filed complaints in the United States District Court for the Southern District of New York against Eaton Vance and many of its affiliated entities, alleging, inter alia, violations of the ICA, the Investment Advisers Act, and breaches of fiduciary duties. The various plaintiffs then stipulated to a consolidation before Judge John G. Koeltl pursuant to Fed. R.Civ.P. 42(a). In his pre-trial order of April 23, 2004, Judge Koeltl directed the plaintiffs to file a consolidated amended complaint (the "CAC"). The pre-trial order further instructed the defendants to "outline their objections to such complaint in a letter to plaintiffs' counsel." Following the submission of the CAC, the defendants dutifully submitted their objections. Having reviewed the letters, but without explicit guidance from the court, the plaintiffs filed a Second Amended Complaint (the "SAC") in August 2004.
 
 
 9
 The SAC enumerated ten causes of action, only four of which are relevant to this appeal. In essence, the plaintiffs allege that: (1) the defendants made misrepresentations and omissions of material fact in registration statements, in violation of ICA § 34(b); (2) the defendants breached their fiduciary duties under ICA §§ 36(a) and 36(b) by improperly charging fund investors purported marketing fees and by drawing on the assets of fund investors to make undisclosed payments and excessive commissions; and (3) the Trustee Defendants caused the Investment Advisor Defendants to violate the ICA as set forth above, in violation of ICA § 48(a) (creating "control person liability" for violations of other portions of the ICA).
 
 
 10
 The district court granted the defendants' subsequent motion to dismiss, finding that: (1) no private rights of action exist under §§ 34(b), 36(a), and 48(a); (2) claims under §§ 36(a) and 48(a) must be brought derivatively, and plaintiffs lack standing to file derivative suits; and (3) plaintiffs' § 36(b) claims fail as a matter of law. The plaintiffs then moved for reconsideration and for leave to file a third amended complaint. The district court granted the motion to reconsider but ultimately adhered to its prior decision, and denied the motion for leave to amend.
 
 
 11
 On appeal, the plaintiffs seek to resuscitate their ICA claims and further argue that the district court erred in failing to grant leave to file a third amended complaint.
 
 
 12
 For the reasons that follow, we affirm.
 
 DISCUSSION
 
 13
 A. Private rights of action under ICA §§ 34(b), 36(a), and 48(a)
 
 
 14
 We review de novo a district court's dismissal of a complaint under Fed. R.Civ.P. 12(b)(6), accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiffs' favor. Kalnit v. Eichler, 264 F.3d 131, 137-38 (2d Cir.2001).
 
 
 15
 Congressional intent is the keystone as to whether a federal private right of action exists for a federal statute. See Alexander v. Sandoval, 532 U.S. 275, 286, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001). Without a showing of congressional intent, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." Id. at 286-87, 121 S.Ct. 1511. This Court must "begin . . . [its] search for Congress's intent with the text and structure" of the statute, id. at 288, 121 S.Ct. 1511, and cannot ordinarily conclude that Congress intended to create a right of action when none was explicitly provided. See, e.g., Touche Ross & Co. v. Redington, 442 U.S. 560, 571, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) ("Implying a private right of action on the basis of congressional silence is a hazardous enterprise, at best.").
 
 
 16
 Here, no provision of the ICA explicitly provides a private right of action for violations of §§ 34(b), 36(a), or 48(a). Thus, we begin with the presumption that Congress did not intend one. Our presumption is buttressed by three additional features of the ICA.
 
 
 17
 First, "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." Sandoval, 532 U.S. at 290, 121 S.Ct. 1511. Here, § 42 of the ICA explicitly provides for enforcement of all ICA provisions by the SEC through investigations and civil suits for injunctions and penalties. See 15 U.S.C. § 80a-41.
 
 
 18
 Second, "Congress's explicit provision of a private right of action to enforce one section of a statute suggests that omission of any explicit private right to enforce other sections was intentional." Olmsted v. Pruco Life Ins. Co., 283 F.3d 429, 433 (2d Cir.2002); see also Touche Ross, 442 U.S. at 572, 99 S.Ct. 2479 ("Obviously . . . when Congress wished to provide a private damage remedy, it knew how to do so and did so expressly."). Here, § 35(b) of the ICA creates a private right of action for investors in regulated investment companies for the breach of fiduciary duties. See 15 U.S.C. § 80a-35. Thus, it seems apparent that Congress's omission of an explicit private right of action in §§ 34(b), 36(a), and 48(a) was intentional.
 
 
 19
 Third, the absence of "rights-creating language" indicates a lack of congressional intent to create private rights of action. Olmsted, 283 F.3d at 435. More specifically, "[s]tatutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons." Sandoval, 532 U.S. at 289, 121 S.Ct. 1511; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002) ("But even where a statute is phrased in . . . explicit rights-creating terms, a plaintiff suing under an implied right of action still must show that the statute manifests an intent `to create not just a private right but also a private remedy.'" (quoting Sandoval, 532 U.S. at 286, 121 S.Ct. 1511)). Here, the focus on regulated entities in §§ 34(b), 36(a), and 48(a) preclude finding an implied right of action.
 
 
 20
 Recognizing this problem, plaintiffs attempt to connect the dots to other sections of the ICA that do focus on the individuals protected. For instance, while § 34(b) makes it "unlawful for any person to make any untrue statement of a material fact in any registration statement . . . or other document . . . the keeping of which is required pursuant to section 31(a)," the plaintiffs argue that, because both § 31(a) and the section that governs the contents of registration statements indicate that they are "for the protection of investors," then § 34(b) constructively includes that language as well. This argument fails in the face of the strong presumption against creating private rights of action. Such an expansive reading of the statutory text would find implied rights of action in every section of the ICA. This was clearly not Congress's intent.
 
 
 21
 Section 36(a) prohibits a "breach of fiduciary duty involving personal misconduct," but makes no mention of the individuals protected. 15 U.S.C. § 80a-35. Section 48(a) imposes "control person liability" by making it "unlawful for any person, directly or indirectly, to cause to be done any act or thing . . . which would be unlawful . . . under the provisions of this title." 15 U.S.C. § 80a-47(a). The plaintiffs fail to persuade us that there is "rights-creating language" in either of the two aforementioned sections. Their reliance on a "long line of decisions recognizing implied private rights of action" under the ICA is misplaced. Many of these cases were decided at least fifteen years ago, when the "courts had more latitude to weigh statutory policy and other considerations than they do now." Olmsted, 283 F.3d at 433-34 & n. 4 (collecting cases).
 
 
 22
 The analysis ends there, because the text and the structure of the ICA reveal no ambiguity about Congress's intention to preclude private rights of action to enforce §§ 34(b), 36(a), and 48(a). Thus, plaintiffs' appeal to certain language reflecting a contrary intent in a 1980 post-enactment legislative committee report is unavailing, for such material is out of bounds. See Sandoval, 532 U.S. at 288, 121 S.Ct. 1511 ("In determining whether statutes create private rights of action . . . legal context matters only to the extent it clarifies text."). The report in question states that despite the "strict construction of statutory language and expressed intent" of recent Supreme Court opinions, "[t]he Committee wishes to make plain that is expects the courts to imply private rights of action under this legislation . . . . In appropriate circumstances, for example, breaches of fiduciary duty involving personal misconduct should be remedied under Section 36(a) of the Investment Company Act." H.R. Rep. No. 96-1341, at *28-29 (1980). That language is irrelevant in this case, however. When the text and structure of a statute unambiguously express an intent not to imply a private right of action, we cannot consider "the expectations that the enacting Congress had formed in light of the contemporary legal context." Sandoval, 532 U.S. at 287-88, 121 S.Ct. 1511 (internal quotation marks and citation omitted).
 
 
 23
 For all of these reasons, we hold that implied private rights of action do not exist under ICA §§ 34(b), 36(a), and 48(a).
 
 B. Excessive fee claims under ICA § 36(b)
 
 24
 Section 36(b) provides that "the investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services." 15 U.S.C. § 80a-35(b) (emphasis added). Generally speaking, a § 36(b) claim must allege that "the adviser-manager . . . charge[d] a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining." Gartenberg v. Merrill Lynch Asset Mgmt., Inc., 694 F.2d 923, 928 (2d Cir.1982). The Investment Adviser Defendants and Trustee Defendants were not the recipients of the commissions and fees in question. Thus, we need not parse the Gartenberg factors as to those defendants. Though we make no finding about the propriety of these payments, it is clear from the language of § 36(b)(3) that no action may be brought under this section "against any person other than the recipient of such compensation or payments." 15 U.S.C. § 80a-35(b)(3). This is fatal to the plaintiffs' § 36(b) claims as to the Investment Adviser Defendants and Trustee Defendants.
 
 
 25
 The plaintiffs' claim against Eaton Vance Distributors also fails, albeit for different reasons. In order to state a claim under § 36(b), one must allege excessive fees, rather than fees that might simply be described as "improper." Gartenberg, 694 F.2d at 928. Furthermore, the complaint must specifically allege that the fees were so disproportionately large that they bore no relationship to the services rendered. Id. at 928. Because the plaintiffs failed to satisfy these pleading requirements, the district court properly dismissed the § 36(b) claim against Eaton Vance Distributors.
 
 C. Denial of motion for leave to amend
 
 26
 We review a district court's denial of leave to file an amended complaint for abuse of discretion. See, e.g., State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld, 921 F.2d 409, 418 (2d Cir. 1990). Notably, as here, "[w]hen a moving party has had an opportunity to assert the amendment earlier, but has waited until after judgment before requesting leave, a court may exercise its discretion more exactingly." Id.
 
 
 27
 We recognize that "[w]hen a motion to dismiss is granted, `the usual practice is to grant leave to amend the complaint.'" Ronzani v. Sanofi S.A., 899 F.2d 195, 198 (2d Cir.1990) (citation omitted); see also Fed.R.Civ.P. 15(a) ("[L]eave to amend shall be freely given when justice so requires."). Nevertheless, "while Rule 15 plainly embodies a liberal amendment policy, in the post-judgment setting we must also take into consideration the competing interest of protecting the finality of judgments and the expeditious termination of litigation." PR Diamonds, Inc. v. Chandler, 364 F.3d 671, 698-99 (6th Cir.2004).
 
 
 28
 Despite getting two previous opportunities to amend (upon consolidation and in the SAC), plaintiffs seek yet another bite at the proverbial apple. The district court ruled, in a well-reasoned and thorough order — that falls well-short of abuse of discretion — that the plaintiffs "were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies." In re Eaton Vance Mut. Funds Litig., 403 F.Supp.2d 310, 318 (S.D.N.Y.2005) (relying on PR Diamonds, Inc., 364 F.3d at 699); see also Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (denying leave to amend where there is "repeated failure to cure deficiencies by amendments previously allowed"). Leave to amend is especially inappropriate where, as here, plaintiffs' proposed amendments merely recycled versions of claims which had already fallen victim to a motion to dismiss. See Hayden v. County of Nassau, 180 F.3d 42, 53-54 (2d Cir.1999) ("[W]here the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner that would survive dismissal, opportunity to replead is rightfully denied.").
 
 
 29
 We therefore hold that the district court's denial of the plaintiffs' motion for leave to file a third amended complaint was not an abuse of discretion.
 
 CONCLUSION
 
 30
 For the foregoing reasons, we AFFIRM the decision of the district court.
 
 
 
 Notes:
 
 
 *
 The Honorable John Gleeson, United States District Judge for the Eastern District of New York, sitting by designation
 
 
 [1]
 The Defendants are Eaton Vance Corp., its wholly-owned subsidiary Eaton Vance, Inc., Lloyd George Investment Management (B.V.I.) Limited (collectively, the "Parent Company Defendants"); Eaton Vance Management ("EVM"), Boston Management and Research ("BMR"), OrbiMed Advisors LLC, Lloyd George Investment Management (Bermuda) Limited (collectively, the "Investment Advisor Defendants"); the Directors, Officers, and Trustees of the Eaton Vance Funds (the "Trustee Defendants"); and Eaton Vance Distributors, Inc. (the "Distributor Defendant")