21-353-cv
Madej v. Yale University

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of March, two thousand twenty-two.

PRESENT:
> PIERRE N. LEVAL,
> MICHAEL H. PARK,
> MYRNA PÉREZ,
> *Circuit Judges.*

_____

JAKUB JONASZ MADEJ,

> *Plaintiff-Appellant*,

> v.                                                                21-353

YALE UNIVERSITY, MARVIN CHUN, MARK SCHENKER, PETER SALOVEY, JESSIE ROYCE HILL,

> *Defendants-Appellees.*

_____

| | |
|---|---|
| **FOR PLAINTIFF-APPELLANT:** | Jakub Madej, *pro se*, Milford, CT. |
| **FOR DEFENDANTS-APPELLEES:** | Patrick M. Noonan, Donahue, Durham & Noonan, PC, Guilford, CT. |

Appeal from a judgment of the United States District Court for the District of Connecticut (Hall, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Jakub Madej, a former Yale College student proceeding *pro se*, sued Yale University, as well as its president and various deans (together, "Defendants"), after he was involuntarily withdrawn from Yale's undergraduate program for failing a class while on Academic Warning. In his suit, Madej asserted claims of fraudulent misrepresentation, fraud, negligence, breach of contract, and interference with contract, all stemming from his involuntary withdrawal from Yale. The district court permitted Madej to amend his complaint twice, but eventually granted Defendants' motion to dismiss the second amended complaint for failure to state a claim. Madej did not ask to amend his complaint for a third time. The district court then dismissed Madej's claims with prejudice because he had already amended twice and because Defendants would be prejudiced by further delay. On appeal, Madej argues that the district court (1) erred by dismissing his complaint for failure to state a claim, (2) abused its discretion by failing to grant him leave to amend a third time, and (3) abused its discretion by dismissing the complaint with prejudice *sua sponte*. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal.

I.     Failure to State a Claim

*First*, the district court did not err by dismissing Madej's complaint for failure to state a claim. We review *de novo* the dismissal of a complaint under Rule 12(b)(6). *See Darby v. Greenman*, 14 F.4th 124, 127 (2d Cir. 2021). To survive a motion to dismiss, the complaint must

2

plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[Although] a court must accept as true all of the allegations contained in a complaint," this tenet is "inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action . . . do not suffice.").

Madej's second amended complaint contained five causes of action: (1) fraudulent misrepresentation, (2) fraud, (3) breach of contract, (4) negligence, and (5) interference with contract. We agree with the district court that Madej failed to plausibly allege these claims.

A. Fraudulent Misrepresentation and Fraud Claims

The elements of fraudulent misrepresentation and fraud under Connecticut law are essentially identical: "(1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon the false representation to his injury." *Manzo-Ill v. Schoonmaker*, 204 A.3d 1207, 1211 n.5 (Conn. App. Ct. 2019) (citation omitted) (fraudulent misrepresentation); *accord Longbottom v. Longbottom*, 231 A.3d 310, 316 (Conn. App. Ct. 2020) (fraud).

Madej alleged that Mark Schenker, Chairman of the Committee on Honors and Academic Standing (the "Committee"), made the following false statements in emails and a letter informing Madej that the Committee had denied his petition appealing his involuntary withdrawal: (1) "the Committee on Honors and Academic Standing met on January 13, 2020 and voted without dissent not to approve Madej's petition," App'x 36; (2) "the Committee . . . is made up of tenured and non-tenured members of the Yale College Faculty, representatives of the Yale College Dean's Office, and undergraduate students," *id*. at 37; and (3) "each of the members of the Committee

3

received requisite documents before the alleged meeting," *id.* Madej also alleged that Yale made the following fraudulent statements on its website: (1) "matters related . . . to withdrawals from Yale College were considered and adjudicated by [the] Committee on Honors and Academic Standing, a deliberative body within Yale College," *id.* at 40; (2) "the Committee meets about twice a month during the regular academic year," *id.* (internal quotation marks omitted); and (3) "the Committee is composed of representatives of the Yale College Dean's Office, tenured and non-tenured faculty members, as well as undergraduate students," *id.*

Madej asserted that these statements "created a misleading impression that a collective body existed within Yale College that was charged with adjudicating Madej's application" and that they were made to prevent Madej from discovering that Schenker was actually the only Committee member. *Id.* at 38. According to Madej, Schenker repeated the false statements to Yale's registrar and knew that Madej would not be able to challenge the statements because he had to leave the country after being withdrawn.[1] As a result, Madej suffered unspecified "damages in an amount to be proven at trial." *Id.* at 39.

The district court did not err in dismissing these claims. Even assuming that these statements about the Committee's make-up and decision process were untrue and that Defendants knew they were untrue, Madej failed to plausibly allege how the statements induced him to act or injured him. *See Manzo-Ill*, 204 A.3d at 1211 n.5; *Longbottom*, 231 A.3d at 316. Although Madej alleged that the statements prevented him from contesting his withdrawal earlier, that claim is in tension with Madej's own claim that he acted expediently to contest his withdrawal as soon as he became aware of it and availed himself of the Committee's processes. He did not allege

---

[1] According to Madej's operative complaint, he was in the United States on a student visa and he thus had to leave the country within 15 days after being withdrawn from Yale.

what other action he could have taken but for the alleged falsities. Moreover, Madej's claim that he suffered money damages was conclusory—he offered no explanation how the statements caused any such injury. *See Ashcroft*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action . . . do not suffice" to state a claim.). Thus, Madej failed to state a claim for fraudulent misrepresentation or fraud.

B. Breach of Contract Claim

Connecticut law recognizes "a cause of action for institutional breach of a contract for educational services" where the plaintiff makes a showing that "the educational institution failed to fulfil[l] a specific contractual promise distinct from any overall obligation to offer a reasonable program." *Gupta v. New Britain Gen. Hosp.*, 687 A.2d 111, 119–20 (Conn. 1996).

Madej alleged that Yale breached a contract that had purportedly been formed upon his enrollment by "not implement[ing] any procedures or policies to provide procedural safeguards to student[s] who have been in the process of being involuntarily withdrawn from Yale." App'x 42. Madej alleged that Yale further breached that contract by "not following or disclosing guidelines for protecting [Madej's] fundamental rights," which breached "the implied covenant of good faith and fair dealing." *Id*. at 42–43. Finally, Madej asserted that Yale breached by "failing to provide [Madej] with timely information he needed to make reasonable decisions regarding his academic choices," "creating [a] hostile atmosphere in his residential college, where he felt alienated and unwelcome by his college dean," "providing conflicting, illogical answers to all questions regarding his [involuntary withdrawal] situation, and refusing to provide reasonable support," and "refusing to consider whether the Committee's decision [wa]s arbitrary, [or] supported by the evidence, and not providing any way to request such action." *Id*.

Even accepting these allegations as true, they fail to state a breach of contract claim under

5

Connecticut law because Madej did not allege that his contract with Yale included a specific promise that the school would provide such information or processes. Instead, he merely alleged that "[i]t is well-settled that a relationship between a student and a university in which he enrolls is contractual in nature," and "[a] material part of that contract is the conditions, procedures, and policies in which a student may be involuntarily withdrawn from the university." App'x 42. Madej points to no specific contractual promise that Yale allegedly breached, so his breach of contract claim fails. *See, e.g.*, *Faigel v. Fairfield Univ.*, 815 A.2d 140, 144 (Conn. 2003) (holding alleged promise that plaintiff "would be allowed 'many credits' from her prior engineering studies . . . is too imprecise to qualify for consideration as a 'specific contractual promise'").

C. Negligence Claim

"The essential elements of a cause of action in negligence are . . . duty; breach of that duty; causation; and actual injury." *Osborn v. City of Waterbury*, 220 A.3d 1, 6 (Conn. 2019). A negligence claim against a university is cognizable "[i]f the duty alleged to have been breached is the common-law duty not to cause physical injury by negligent conduct," *Doe v. Yale Univ.*, 748 A.2d 834, 847 (Conn. 2000).

Madej alleged that Defendants were negligent when they knowingly failed to adopt a "mechanism or avenue for appeal" of his involuntary withdrawal. App'x 44. This failure allegedly breached several duties of care, including: (1) the "duty to provide him with information that might materially impact [his academic choices]," (2) the "duty to protect him from reasonable harm," and (3) the "duty of reasonable care." *Id*. But none of these allegations amounts to a breach of "the common-law duty not to cause physical injury by negligent conduct." *Doe*, 748 A.2d at 847. Moreover, Madej does not allege that he suffered physical injury due to Defendants' failure to implement adequate processes for contesting withdrawal. Thus, Madej failed to state a

6

negligence claim.

To the extent that Madej claims that he asserted a claim for negligent infliction of emotional distress, he also failed to state a claim. A negligent infliction of emotional distress claim requires a showing that "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." *Carrol v. Allstate Ins. Co.*, 815 A.2d 119, 127 (Conn. 2003). Madej alleged that "Defendants knew that [Madej] had been treated for depression, and that [he] reasonably relied on their duty to protect him from harm." App'x 44. He further alleged that "[a] reasonable person would have suffered severe emotional distress under the same or similar circumstances." *Id.* Accepting these allegations as true, they are conclusory and do not sufficiently address injury. The district court thus correctly determined that Madej failed to state a claim for negligent infliction of emotional distress.

### D. Interference with Contract Claim

"A claim for intentional interference with contractual relations requires the plaintiff to establish: (1) the existence of a contractual or beneficial relationship; (2) the defendant's knowledge of that relationship; (3) the defendant's intent to interfere with the relationship; (4) that the interference was tortious; and (5) a loss suffered by the plaintiff that was caused by the defendant's tortious conduct." *Bai Haiyan v. Hamden Public Schs.*, 875 F. Supp. 2d 109, 133 (D. Conn. 2012).

Madej alleged that he "was in an employment contract with Professor Edward A. Snyder" while enrolled at Yale and that "Mark Schenker knew about [Madej's] contract because [he] specifically indicated so in his petition [to the Committee]." App'x 44. Madej also alleged that

"Mark Schenker engaged in fraudulent misrepresentation" and "acted with reckless disregard to [Madej's] employment and cause[d] its termination," and that "[h]ad it not been for Schenker's conduct, Madej would not have suffered a loss of employment and employment authorization." *Id*. at 45.

Missing from the complaint is an allegation that any Defendant intended to interfere with Madej's employment contract, an essential element of an intentional interference with contractual relations claim. *See Bai Haiyan*, 875 F. Supp. 2d at 133. Madej thus failed to state a claim for interference with contract.

II.    Leave to Amend

*Second*, Madej argues that the district court abused its discretion by not granting him leave to amend his complaint for the third time. We generally review the denial of leave to amend for abuse of discretion. *See Pasternak v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017). Although courts "should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), it "may properly be denied for . . . 'undue delay, . . . repeated failure to cure deficiencies by amendments previously allowed, [or] undue prejudice to the opposing party by virtue of allowance of the amendment.'" *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

The district court did not abuse its discretion because Madej never requested leave to amend his complaint for a third time. Even if he had done so, the district court would have acted well within its discretion by declining the request. The district court had already permitted Madej to amend his complaint twice, but he still failed to state plausible claims for relief despite having the benefit of some discovery, the district court's ruling on Madej's preliminary injunction motion, and review of Defendants' first motion to dismiss. *See Ruotolo*, 514 F.3d at 191; *Bellikoff v.*

8

*Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (no abuse of discretion in denying leave to amend where plaintiff had "two previous opportunities" to do so). Moreover, granting leave to amend would unduly prejudice Defendants by further delaying the litigation. *See id*.

III.    *Sua Sponte* Dismissal with Prejudice

*Third*, Madej argues that the district court abused its discretion by dismissing his complaint with prejudice *sua sponte*. We ordinarily review a district court's decision to dismiss with prejudice for abuse of discretion. *See Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 106 (2d Cir. 1998). Madej argues that the district court abused its discretion because Defendants had not requested dismissal with prejudice, and because he never amended in bad faith or "with the benefit of a ruling." Even if Madej never amended in bad faith, he did amend with the benefit of discovery, the order resolving the preliminary injunction motion, and Defendants' first motion to dismiss, and he still failed to state a claim. Madej points to no authority suggesting that a court's dismissal with prejudice *sua sponte* is in itself improper, and we do not conclude that it was an abuse of discretion in these circumstances.

                           *       *       *

We have considered Madej's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

                                    FOR THE COURT:
                                    Catherine O'Hagan Wolfe, Clerk of Court

9