# United States Court of Appeals
# for the Second Circuit

August Term, 2020

(Argued: December 7, 2020          Decided: September 16, 2021)

Docket No. 19-2084

_____

DEVIN DARBY,

*Plaintiff-Appellant,*

v.

DAVID GREENMAN, RAFAEL HAMILTON,
JOHN DOE NO. 1, JOHN DOE NO. 2,

*Defendants-Appellees.**

_____

Before:

CABRANES, CARNEY, and PARK, *Circuit Judges.*

Plaintiff Devin Darby suffered from a gum condition that he alleges was not

adequately addressed while he was incarcerated at two Rikers Island correctional

facilities.  Darby filed a *pro se* complaint in the United States District Court for the

---

* The Clerk of Court is directed to amend the caption as set forth above.

Eastern District of New York asserting claims against two dentists, two unidentified Department of Corrections officials, and several municipal defendants for medical malpractice under state law and violations of his Eighth and Fourteenth Amendment rights under 42 U.S.C. § 1983. The district court (Cogan, *J.*) dismissed the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. On appeal, Darby challenges the dismissal of his constitutional claims. We conclude that Darby failed to plead that Defendants acted with deliberate indifference to serious medical needs and thus affirm.

Judge Carney dissents in a separate opinion.

ALEXANDER A. REINERT, New York, NY, *for Plaintiff-Appellant*.

SUSAN PAULSON (Richard Dearing, Deborah A. Brenner, *on the brief*), *for* James E. Johnson, Corporation Counsel of the City of New York, New York, NY, *for Defendants-Appellees*.

PARK, *Circuit Judge*:

Plaintiff Devin Darby suffered from a gum condition that he alleges was not adequately addressed while he was incarcerated at two Rikers Island correctional facilities. Darby filed a *pro se* complaint in the United States District Court for the Eastern District of New York asserting claims against two dentists ("Dentist

2

Defendants"), two unidentified Department of Corrections officials ("Doe Defendants"), and several municipal defendants for medical malpractice under state law and violations of his Eighth and Fourteenth Amendment rights under 42 U.S.C. § 1983. The district court (Cogan, *J.*) dismissed the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. On appeal, Darby challenges the dismissal of his constitutional claims. We conclude that Darby failed to plead that Defendants acted with deliberate indifference to serious medical needs and thus affirm.

# I. BACKGROUND

A.    Factual Background[1]

In February 2017, Darby was housed at the Otis Bantum Correctional Center ("OBCC") on Rikers Island when he began to experience inflammation and pain in his right cheek area. During a health screening, dental clinicians found a three-by-three-centimeter bulge in Darby's gums. Darby sought medical attention by submitting a written sick call request to a correctional officer responsible for placing it in a medical intake mailbox. He was seen at the Rikers Island health

---

[1] The following facts are taken from Darby's first amended complaint ("Complaint") and its supplement, which we assume to be true for purposes of this appeal. *See City of New York v. Chevron Corp.*, 993 F.3d 81, 86 n.1 (2d Cir. 2021).

3

clinic the next day and received ibuprofen for his pain. Darby submitted another sick call request a few days later. The next day, he was examined by a Rikers Island dentist who detected an abscess and scheduled him for an appointment with Dentist Defendant David Greenman.

Greenman saw Darby six days later, on February 17, 2017. During the appointment, Greenman suggested a dental extraction, which Darby insisted was unnecessary. Greenman identified a parotid gland issue and advised that Darby "would need to see a specialist for his gum pain, outside of Rikers Island." Compl. ¶ 19. A week later, Darby began inquiring about when he would be treated. Greenman called Darby back to the clinic, but Darby refused the visit, which he viewed as "another attempt at extracting his tooth." Id. ¶ 20.

By late February, Darby "suffered from pain, inflammation, swelling, inability to chew, sleeplessness, and impaired speech." Id. ¶ 23. He submitted approximately fifteen sick call requests between late February and late April "to follow up on his worsening condition." Id. Darby "received no medical attention, care or other response to his numerous sick call requests." Id. ¶ 26. Between mid-March and late April, he also submitted to a "grievance box" three or four written grievances that "described in detail the worsening pain and suffering he was

4

experiencing, and requested immediate medical attention." *Id.* ¶¶ 27–28. Darby claims that his sick call requests and grievances were "repeatedly ignored." *Id.* ¶¶ 26, 30.

In late April, Darby was transferred from OBCC to the Robert N. Davoren Complex ("RNDC"), also at Rikers Island. During his intake at RNDC, Darby described his gum pain and was scheduled for an appointment with Dentist Defendant Rafael Hamilton. On May 25, 2017, Darby met with Hamilton, described his symptoms and history, and was scheduled for a second appointment. At Darby's second appointment, on June 5, Hamilton performed a dental cleaning. Darby "protested and explained that he had a serious gum issue, and needed more than a cleaning," but "Hamilton ignored him." *Id.* ¶ 37. Darby's symptoms persisted, and in mid-June, he submitted four sick call requests "describing his pain and symptoms and request[ing] immediate medical care." *Id.* ¶¶ 38–39. He received no response.

In late June, Darby was transferred to another facility and was eventually referred to a specialist. After several visits with different specialists, a large mass was found in Darby's gums. He underwent gum surgery in February 2018.

Darby seeks an unspecified amount of damages for "significant and lasting damage" resulting from Defendants' failure to provide him with proper medical treatment. *Id.* ¶ 44. Specifically, Darby's relationships with friends and family—including a three-year relationship with his then-fiancée—suffered because of his impaired speech. He also lost 20 pounds due to difficulty chewing. Darby alleges that if the Dentist Defendants had provided prompt and appropriate medical care, he would not have suffered the physical pain he endured, and if the Doe Defendants had responded to his grievances, he could have been treated earlier and avoided significant pain.

B.    Procedural History

Darby, proceeding *pro se*, commenced this action under 42 U.S.C. § 1983 for violations of his Eighth and Fourteenth Amendment rights against the City of New York, New York City Health and Hospitals Corporation ("NYCHHC"), and Correctional Dental Associates ("CDA"); Dentist Defendants David Greenman and Rafael Hamilton; and the Doe Defendants. He also brought state-law claims of medical malpractice against NYCHHC, CDA, Greenman, and Hamilton.

During an initial conference, the district court explained to Darby that his constitutional claims, as alleged, would not survive a motion to dismiss and

6

offered him the opportunity to amend. Darby filed an amended complaint, and Defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). Darby subsequently moved to supplement his complaint with additional facts that he claimed would "clearly demonstrate that the Defendants acted with deliberate indifference." Supp. Compl. at 1. The district court granted the motion and thus construed the amended complaint to include the newly alleged facts.

The district court granted the motion to dismiss as to all Defendants. *See Darby v. N.Y.C. Health & Hosps. Corp.*, No. 18-cv-2869, 2019 WL 1994490, at *1 & n.1 (E.D.N.Y. May 6, 2019). It dismissed the section 1983 claims against the City, NYCHHC, and CDA for failure to allege a municipal policy or practice that resulted in a violation of Darby's constitutional rights. *Id.* at *3. The district court also dismissed the constitutional claims against the Dentist Defendants and the Doe Defendants. The court held that Darby had not alleged that any of these Defendants acted with deliberate indifference to a sufficiently serious medical need. *Id.* at *4–7. As to the Dentist Defendants, the district court held that, "at most, defendants' conduct . . . constitute[d] medical malpractice," which "is not a cognizable claim for deliberate indifference." *Id.* at *6. The court also found that

7

Darby failed to establish personal involvement by the Doe Defendants because he "ha[d] not alleged that the grievances ever reached [them] before he was transferred to another facility," nor had he alleged any "facts—rather than legal conclusions—to suggest that the [Doe Defendants] knew or should have known of an excessive risk to [his] health." *Id.* at *7.

The district court declined to exercise supplemental jurisdiction over Darby's state-law claims for medical malpractice and dismissed them without prejudice to refiling in state court. *Id.* Finally, the court denied leave to amend as futile because Darby "ha[d] not stated a claim for relief after filing an amended complaint, which he further supplemented." *Id.*

Darby timely appealed.

## II. LEGAL STANDARDS

A. Standard of Review

We review *de novo* the dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6). *Bacon v. Phelps*, 961 F.3d 533, 540 (2d Cir. 2020). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] complaint that merely 'tenders naked assertions devoid of further factual enhancement' fails to meet this standard," *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678), as do "unadorned, the-defendant-unlawfully-harmed-me accusation[s]," *Iqbal*, 556 U.S. at 678.

We construe a *pro se* complaint "liberally to raise the strongest arguments it suggests." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (cleaned up). "Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Id.*

B.     Deliberate Indifference

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment[,] . . . whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care." *Id.* at 104–05 (citation and footnote omitted). The Court subsequently extended the protections for convicted prisoners established in *Estelle* to pretrial detainees under the Due Process Clause of the Fourteenth Amendment, reasoning that "the due process rights of a person [detained but not convicted] are at least as great as the Eighth Amendment

9

protections available to a convicted prisoner." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983).

"[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not" does not meet this standard. *Id.* at 838.

"[A] detainee asserting a Fourteenth Amendment claim for deliberate indifference to his medical needs can allege either that the defendants *knew* that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health." *Charles v. Orange County*, 925 F.3d 73, 87 (2d Cir. 2019). "[D]eliberately indifferent conduct" is "egregious enough to state a substantive due process claim." *Id.* at 86 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 849–50 (1998)). Deliberate indifference requires, at a minimum, "culpable recklessness, *i.e.*, an act

or a failure to act that evinces a conscious disregard of a substantial risk of serious harm." *Id.* at 87 (cleaned up); *see also Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).

## III. DISCUSSION

Darby challenges the district court's dismissal of his constitutional claims against the Dentist Defendants and the Doe Defendants. He contends that the district court "disregarded the factual allegations contained in [the] complaint and failed to draw reasonable inferences therefrom in his favor." Appellant's Br. at 1. We conclude that Darby failed to allege that the Dentist Defendants acted with deliberate indifference or that the Doe Defendants were personally involved in a deprivation of Darby's constitutional rights.

A.     Defendant Greenman

Darby's Fourteenth Amendment claim against Greenman fails because he does not allege that Greenman acted with deliberate indifference. As described above, Greenman saw Darby in late February 2017 and suggested a tooth extraction, an assessment with which Darby strongly disagreed. *See supra* at 4. When Darby followed up and was called back to the clinic, he "refused the visit because he knew he did not need a tooth extraction." Compl. ¶ 20.

11

These allegations do not even suggest that Greenman acted with deliberate indifference. Darby does not claim that Greenman denied him treatment but instead disagrees with Greenman's assessment of the severity of his condition and recommendation for treatment.[2] This constitutes, at most, a difference of opinion about the proper course of treatment; it does not demonstrate deliberate indifference to a substantial risk of harm to Darby's health. *See Charles*, 925 F.3d at 87. Even assuming that Greenman's proposed treatment was inadequate, "mere medical malpractice is not tantamount to deliberate indifference" absent a showing of "conscious disregard of a substantial risk of serious harm." *Id.* (citation omitted). Thus, Darby has not alleged that Greenman acted with deliberate indifference under the Fourteenth Amendment.

B.    Defendant Hamilton

Darby similarly fails to state a claim of deliberate indifference under the Eighth Amendment against Hamilton. Darby was in Hamilton's care from late May to late June and was seen twice during that time. At the second appointment, Hamilton gave Darby "a basic dental cleaning," which Hamilton said would relieve Darby's gum pain. Compl. ¶ 37. "Darby protested and explained that he

---

[2] Although Darby alleges that his requests for medical attention were ignored, he does not allege that Greenman received the requests or refused to see Darby.

had a serious gum issue, and needed more than a cleaning," but he claims that Hamilton ignored him. *Id.*

These allegations fail to establish that Hamilton possessed a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). Even if we were to assume that a dental cleaning was inadequate and that Hamilton should have known this, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 106. Darby has thus failed to state an Eighth Amendment claim against Hamilton.[3]

---

[3] The dissent would base a finding of deliberate indifference on its opinion that the Dentist Defendants' proposed treatments were not "actually responsive" to Darby's condition. Dissent at 6–8. But the post hoc medical assessments of judges cannot compensate for a plaintiff's failure to plead facts sufficient to "evince[] a conscious disregard of a substantial risk of serious harm." *Id.* at 6 (quoting *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)).

The cases cited by the dissent do not call for inferring culpable recklessness from allegations of inadequate treatment alone. In *Chance*, the plaintiff "[c]rucially . . . also alleged" that the dentists made an "intentionally wrong" recommendation "because of monetary incentives." 143 F.3d at 704. Similarly, in affirming the denial of a directed verdict for the defendant in *Hathaway v. Coughlin*, we held that a rational jury could have inferred deliberate indifference by a doctor who "knew that the course of treatment was largely ineffective" because he had "frequently examined" the plaintiff. 37 F.3d 63, 68 (2d Cir. 1994). And in a nonprecedential summary order in *Gaffney v. Perelmuter*, we decided that a reasonable jury could find deliberate indifference where the risk was "obvious" and based on a particular "confluence of factors," including the defendant "proceeding with insufficient time, ignoring yells of pain, breaking the tooth, [and] repeatedly slipping and stabbing the area." 805 F. App'x 53, 57–58 (2d Cir. 2020).

## C. Doe Defendants

Finally, Darby fails to allege that the Doe Defendants acted with deliberate indifference. The complaint of course does not name the Doe Defendants, whom it identifies only as Department of Corrections "administrators, officials and employees in charge of processing and responding to sick calls and grievances." Compl. ¶ 5.[4] Darby alleges that the Doe Defendants ignored approximately fifteen sick call requests that he submitted "to follow up on his worsening condition," *id.* ¶ 23, and three or four grievances that "described in detail the worsening pain and suffering he was experiencing," *id.* ¶¶ 27–28; *see supra* at 4–5.

Darby fails to state a claim against the Doe Defendants because he does not allege any "personal involvement . . . in alleged constitutional deprivations." *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). The complaint does not specify when Darby submitted the sick call requests, to whom he submitted them, or what information they conveyed.

---

[4] The district court held several discovery conferences in an effort to identify the Doe Defendants. Despite an extensive search, Darby's sick call requests had not been located and the Doe Defendants had not been identified at the time of dismissal.

To allow Darby's claims against the Doe Defendants to proceed, we would have to assume the elements of liability. Specifically, we would need to assume that (1) the Doe Defendants actually received and read Darby's requests; (2) the requests described the seriousness of Darby's condition in such a way that the Doe Defendants knew or should have known that doing nothing would risk substantial harm; and (3) the Doe Defendants' failure to take action in response to Darby's requests was reckless even though Darby was already seeing a dentist.[5] In other words, we would need to fill in various gaps in the complaint.

Although we afford a *pro se* litigant a certain degree of latitude in the sufficiency of his factual allegations, "a liberal interpretation of a *pro se* civil rights complaint may not supply essential elements of the claim that were not initially pled." *Litmon v. Harris*, 768 F.3d 1237, 1241 (9th Cir. 2014) (citation omitted); *see also, e.g.*, *Fleming v. United States*, 146 F.3d 88, 90 (2d Cir. 1998) (explaining that where a *pro se* pleading "fails even vaguely to suggest an essential element of a claim for relief, the district court is not required to overlook the deficiency").[6]

---

[5] This requires an additional assumption that the Doe Defendants did not know that Darby had already seen Greenman, because if they had known, it would hardly seem unreasonable for them not to respond to requests that would be referred to a dentist anyway.

[6] The dissent's charge that the majority draws inferences against Darby, *see* Dissent at 11 n.6, has it backwards. While we construe pleaded facts in the light most favorable to the plaintiff,

15

Darby contends that we can infer the Doe Defendants' involvement based on *Grullon v. City of New Haven*, 720 F.3d 133 (2d Cir. 2013). But in *Grullon*, we found only that the district court should have afforded the plaintiff at least an opportunity to amend because the court could infer from specific allegations about the plaintiff's sending of a letter "that the [defendant] in fact received the [l]etter, read it, and thereby became aware of the alleged conditions of which [the plaintiff] complained." *Id.* at 141. There, we clarified that these inferences could be drawn if an amended complaint included allegations specifying the addressee, address, and means of delivery, and because the letter itself was included in the record. *See id.*

Here, by contrast, Darby has provided no factual basis that would allow us to infer receipt or (even assuming receipt) to impute to the Doe Defendants knowledge of the severity of Darby's condition.[7] Although Darby alleges that his

---

we can draw inferences based only on the facts actually alleged, and we are not free to speculate about unpleaded facts that might be favorable to the plaintiff. The complaint "provides no basis for presuming" that, despite Darby's dental visits on dates overlapping with the period of his objections, the Doe Defendants "knew that Darby was not receiving effective—or indeed any— treatment yet still did nothing." *Id.*

[7] We are not required to credit Darby's conclusory allegation that the Doe Defendants "were aware of [his] condition, that it was a serious medical condition, that it was getting increasingly worse, and that urgent medical attention was needed in order to resolve the issue." Compl. ¶¶ 25, 29; *see Twombly*, 550 U.S. at 555 (explaining that courts "are not bound to accept as true a legal conclusion couched as a factual allegation" (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986))).

16

grievances described his "worsening pain and suffering," Compl. ¶ 27, we cannot, in the absence of allegations further specifying the content of his grievances, reasonably infer that the Doe Defendants knew or should have known that failing to act would pose a substantial risk to Darby's health.

In short, Darby's allegations as to the Doe Defendants are limited to making numerous complaints to which he never received a response. That is not enough to state a Fourteenth Amendment claim of deliberate indifference. Even for *pro se* pleadings, "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Litmon*, 768 F.3d at 1241 (citation omitted). We thus affirm the district court's dismissal of Darby's claims against the Doe Defendants.

## IV.  CONCLUSION

For the reasons set forth above, the district court's judgment is affirmed.

CARNEY, *Circuit Judge*, dissenting:

Plaintiff-Appellant Devin Darby alleges in his *pro se* complaint that while incarcerated at Rikers Island he suffered from a gum abscess—an infected bulge in his mouth measuring over one inch by one inch. In addition to the resulting continuous pain, the condition interfered with his ability to chew, talk, and sleep, and caused him to lose 20 pounds. The two dental professionals provided by the prison offered, respectively, to pull a tooth and to perform a teeth cleaning.[1] One of those professionals acknowledged that Darby's condition required a specialist's care.

As his condition became more acute, Darby submitted at least 15 sick call requests and filed three to four related grievances in which he described his increasingly severe symptoms and requested treatment urgently. He alleges that prison officials whose names he does not know received these requests and grievances and were aware of his condition. No response was forthcoming. Despite his numerous requests, the abscess went essentially untreated for over four months. After he was transferred from Rikers to another prison facility, however, he underwent gum surgery that treated the abscess, alleviated the pain, and ended his incapacity.

In my view, Darby plausibly pleaded a deliberate-indifference claim under 42 U.S.C. § 1983 against the two medical professionals who saw him at Rikers and against the Doe Defendants—the unidentified prison officials responsible for providing

---

[1] These factual allegations are drawn from Darby's amended complaint and proposed further amendment to his complaint, which the district court considered in its Rule 12(b)(6) decision, and on which the Majority also relies. *See Darby v. New York City Health & Hosps. Corp.*, 2019 WL 1994490, at *1 (E.D.N.Y. May 6, 2019) ("The facts are taken from the [Complaint] (and its supplement)."). As did the district court, we take them as true for the purpose of this motion to dismiss.

prisoners with adequate medical care.[2] The district court erred by dismissing his complaint under Rule 12(b)(6). And, in affirming the district court's ruling, the Majority draws inferences against Darby and fails to construe his *pro se* complaint "to raise the strongest arguments it suggests." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).[3] The Majority thus departs from the plausibility standard and effectively immunizes from suit these prison officials and the doctors they employed, who provided starkly inadequate care to Darby while he was incarcerated at Rikers.

For these reasons and those discussed below, I respectfully dissent from the Majority's decision to affirm the district court's judgment.

## I. Legal framework

Darby's claims arose during his time in custody, first in a pretrial setting and then after his conviction. His § 1983 claims therefore implicate the protections of both the Fourteenth Amendment, as to his pretrial detention, and the Eighth Amendment, as to his posttrial incarceration.

To state a claim under § 1983 as to either, Darby must allege that he was denied treatment for an objectively "serious medical condition." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). He must also plausibly allege that the defendants acted with "deliberate indifference" to his serious medical needs. *Estelle*, 429 U.S. at 104-05. With regard to his Fourteenth Amendment pretrial-

---

[2] The complaint identifies the Doe Defendants as "the DOC [Department of Corrections] administrators, officials and employees in charge of processing and responding to sick calls and grievances at OBCC [Otis Bantum Correctional Center] and RNDC [Robert N. Davoren Complex]." J.A. 14 (Compl. ¶ 5). Both the OBCC and RNDC facilities are located at Rikers Island.

[3] Unless otherwise noted, in text quoted from caselaw, this dissent omits all alterations, citations, footnotes, and internal quotation marks.

detention claim, Darby must allege facts sufficient to support an inference that the relevant defendants acted with deliberate indifference under the objective standard: that is, that Dr. Greenman and the Doe Defendants knew or should have known that they exposed Darby to an objectively serious harm or risk of harm. *See Darnell*, 849 F.3d at 35. With regard to his Eighth Amendment post-conviction claim, in contrast, Darby must allege facts sufficient to demonstrate deliberate indifference on the part of Dr. Hamilton under the subjective standard, meaning that Dr. Hamilton was aware of and consciously disregarded a substantial risk of serious harm. *Id.* at 32-33.

## II.    Darby plausibly alleges that he suffered from a "serious medical condition"

The Majority does not contest that Darby alleges a serious medical condition when he describes his physical state and his diagnosis of a dental abscess.[4] A "serious medical condition" is one that poses "an unreasonable risk of serious damage" to an inmate's health. *Darnell*, 849 F.3d at 30. One that is merely "uncomfortable and annoying" is insufficient, but the medical issue need not be "life-threatening" or "at the limit of the human ability to bear" to provide an adequate predicate for an Eighth Amendment claim. *Brock v. Wright*, 315 F.3d 158, 163 (2d Cir. 2003); *see Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). Factors to be weighed when evaluating whether a condition is sufficiently serious to merit Eighth Amendment consideration include "whether a reasonable doctor or patient would find it important and worthy of comment, whether the condition significantly affects an individual's daily activities,

---

[4] For more information about the condition, the counsel for Defendants refer us to a website maintained by the National Institute of Dental and Craniofacial Research concerning salivary gland abscesses: *Saliva & Salivary Gland Disorders* (July 2018), https://bit.ly/2PhfLCX. Darby alleges that he was diagnosed with a "parotid gland issue" by the Rikers clinic staff in February 2017, J.A. 58, which we understand to be different from a tooth abscess.

and whether it causes chronic and substantial pain." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).

There can be no reasonable doubt that the medical condition Darby alleges meets this standard. Darby began to suffer from gum inflammation while detained at Rikers in February 2017. As the mass in his gum "grew increasingly large and painful," Darby had difficulty chewing his food and brushing his teeth. J. A. 15 (Compl. ¶¶ 11, 14). When awake, his speech was impaired. He was unable to sleep. To resolve his condition, he needed surgery. He did not receive that surgery until February 2018, only after he was transferred from Rikers to Watertown Correctional Facility. Darby's gum abscess is thus comparable to those we have held in the past to amount to a serious medical condition. *See, e.g.*, *Chance*, 143 F.3d at 703 (allegation of dental problems resulting in extreme pain, tooth deterioration, and difficulty chewing or speaking was a serious medical condition for Eighth Amendment purposes); *Harrison v. Barklay*, 219 F.3d 132, 137 (2d Cir. 2000) (a tooth cavity can present "a serious medical need" for Eighth Amendment purposes if untreated); *Gaffney v. Perelmuter*, 805 F. App'x 53, 55-57 (2d Cir. 2020) (summary order) (dental pain and numbness in the cheek area can be a serious medical condition).

### III.   Darby's allegations support an inference that the Dentist Defendants exhibited deliberate indifference to his medical needs

Further, Darby alleges facts that plausibly support an inference that the Dentist Defendants, Drs. Greenman and Hamilton, were deliberately indifferent to his medical needs. Darby alleges that when he saw Dr. Greenman for treatment at Rikers Island in February 2017, the clinic had already recorded a "3 by 3 cm bulge" in Darby's gum and had diagnosed his condition as a "dental abscess." J. A. 58. Nevertheless, Dr. Greenman proposed a tooth extraction to treat Darby's pain. Darby explained to Dr. Greenman that "his gums were causing his pain, not his tooth." *Id.* 15-16 (Compl. ¶ 18). Dr.

4

Greenman reexamined Darby and "affirmed" that Darby would need to see a specialist outside of Rikers to treat his gum and withdrew his proposal to extract a tooth. *Id.* (Compl. ¶ 19).[5] Nonetheless, one week after the consultation, Darby was called back to the clinic to undergo a tooth extraction. Darby refused the extraction. *Id.* (Compl. ¶ 20). He alleges that Dr. Greenman did not provide him any further care or arrange for further treatment.

Several months later, in May, a second dentist—Dr. Hamilton—saw Darby in the clinic at Rikers, after the diagnosis and the proposed tooth extraction. Darby had by then been experiencing pain and functional impairment for more than three months. Darby says that on May 25, at his first meeting with Dr. Hamilton, he "explained all of his symptoms," and "described the shooting pain he was experiencing" and "the history of his gum pain." J. A. 17 (Compl. ¶ 36). Dr. Hamilton did not provide any treatment at this first appointment. He scheduled Darby for a follow-up visit.

On June 5, when Dr. Hamilton saw Darby once again, he "ignored" Darby's complaints of gum pain and provided only a "basic dental cleaning." J. A. 18 (Compl. ¶ 37). Dr. Hamilton advised that the cleaning would resolve Darby's gum pain, but Darby protested, insisting that "he had a serious gum issue, and needed more than a cleaning." *Id.* 18 (Compl. ¶ 37). Dr. Hamilton provided no further treatment, however, and Darby's symptoms, including pain from the abscess and significant weight loss, persisted.

---

[5] Darby does not allege he was ever in fact referred to a specialist by Dr. Greenman or any other prison official. That such a referral may have been made at some point, however, would not absolve Dr. Greenman. This Court has "decline[d] to adopt a rule that would exempt general practitioners [including dental practitioners] from being found deliberately indifferent to a patient's serious medical needs as long as that general practitioner at some point refers the patient to a specialist, regardless of the extent of contact that general practitioner has with the patient." *Hathaway v. Coughlin*, 37 F.3d 63, 68 (2d Cir. 1994); *accord Gaffney*, 805 F. App'x at 58.

The Majority takes the position that Darby failed to allege deliberate indifference on the part of either Dr. Greenman or Dr. Hamilton. Rather, the Majority characterizes the complaint as describing, "at most, a difference of opinion about the proper course of treatment." Maj. Op. at 12.

The theory that a difference of opinion over treatment is not enough to support a deliberate indifference claim would dispatch Darby's complaint, however, only if the treatment proposed by the physician is *actually responsive* to the condition diagnosed. *See Chance*, 143 F.3d at 703 ("*So long as the treatment given is adequate*, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." (emphasis added)). We have stressed that "a physician may be deliberately indifferent if he or she consciously chooses 'an easier and less efficacious' treatment plan." *Id.* (quoting *Williams v. Vincent*, 508 F.2d 541, 544 (2d Cir. 1974)); *see also Ceparano v. Suffolk Cnty. Dep't of Health*, 485 F. App'x 505, 508 (2d Cir. 2012) (vacating dismissal of complaint alleging plaintiff complained to nurse of worsening back pain on several occasions and received only "conservative" treatment).

Notably, Defendants here do not argue that a tooth extraction is an appropriate or adequate treatment for a gum abscess. *See* Appellees' Br. 5 n.2; Appellant's Reply Br. 1 (both citing text published by the National Institute of Dental and Craniofacial Research, *Saliva & Salivary Gland Disorders* (July 2018), https://bit.ly/2PhfLCX, which does not list tooth extraction as a possible treatment for a salivary gland disorder). It is therefore reasonable to infer that Dr. Greenman, a trained dentist, knew or should have known that a tooth extraction would neither treat the abscess nor alleviate Darby's related symptoms and that it was at most an "easier and less efficacious" treatment option than others—if it was a treatment at all. *Chance*, 143 F.3d at 703. Dr. Greenman's conduct in simply offering to pull one of Darby's teeth could therefore plausibly "evince[] a conscious disregard of a substantial risk of serious harm" sufficient to

6

establish deliberate indifference. *Id.*; *see also Davis v. McCready*, 283 F. Supp. 3d 108, 122 (S.D.N.Y. 2017) (whether a proposed course of treatment is negligent or objectively reckless is "difficult for a court to discern" at the pleading stage because it "may require a certain level of medical knowledge in order to determine what a reasonable medical professional in the circumstances *would have reason* to know").

The Dentist Defendants also do not dispute that the "basic dental cleaning" that Dr. Hamilton is alleged to have proposed was not an adequate treatment for the almost golf ball–sized mass in Darby's gum. Based on the symptoms, continued pain, and medical history that Darby described, it is reasonable to infer that Dr. Hamilton, also a trained dentist, knew or should have known that his proposed treatment would not alleviate Darby's pain. Darby has described a situation from which it is at least plausible to infer that Dr. Hamilton too "knew the extent of [Darby's] pain, *knew that the course of treatment was largely ineffective,* and declined to do anything more to attempt to improve [Darby's] situation." *Hathaway v. Coughlin,* 37 F.3d 63, 68 (2d Cir. 1994) (emphasis added). As discussed, this scenario, as alleged, amounts to objectively deliberate indifference on the part of Dr. Hamilton.

The Majority also maintains that Darby's allegations do not establish that Dr. Hamilton "possessed a 'sufficiently culpable state of mind,'" because even assuming that the "dental cleaning was inadequate and that Hamilton should have known this," the facts alleged suggest no more than negligence. Maj. Op. at 13 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Respectfully, it is my view that this conclusion runs counter to the Supreme Court's and our Court's precedent. We have held that recklessness can be shown when a "prison official 'knows of and disregards an excessive risk to inmate health or safety.'" *Hathaway*, 99 F.3d at 553 (quoting *Farmer v. Brennan*, 511 U.S. at 837). The official's actual knowledge of that risk "may be proven from the very fact that the risk was obvious." *Spavone v. N.Y. State Dep't of Corr. Servs*.,

7

719 F.3d 127, 138 (2d Cir. 2013). Just last year, in *Gaffney v. Perelmuter*, this Court vacated by summary order a district court's dismissal of a similar complaint. 805 F. App'x at 54. The district court rested its dismissal on the premise that the plaintiff had pleaded only negligence by alleging that a prison dentist "knew or should have known" that the patient's Novocain had not taken effect after ten minutes. *Id.* at 57. Rejecting this premise, the Circuit panel reasoned that "ten minutes was so obviously an insufficient amount of time that [the dentist] must have known it was insufficient." *Id.* at 57 & n.3.

Because our summary orders are non-precedential, *Gaffney* does not control here. Nonetheless, the comparison is instructive: Darby, like the plaintiff in *Gaffney*, has alleged facts supporting a reasonable inference that Dr. Hamilton was aware that a basic dental cleaning would not alleviate any of Darby's symptoms—precisely because it should have been obvious to someone in Dr. Hamilton's position. Darby's detailed, repeated complaints of serious pain and the allegedly obvious presence of a substantial abscess with debilitating symptoms must be enough to plead a plausible claim for deliberate indifference. *Cf. id.* at 59 (concluding that the plaintiff's repeated complaints of pain to a dentist, for which the dentist did not provide relief, was enough for a jury to reasonably infer that the dentist was "consciously disregarding" the plaintiff's pain).

**IV.    As to the Doe Defendants, it was premature to dismiss Darby's complaint**

The Majority upholds the district court's dismissal of Darby's complaint against the Doe Defendants as well, relying on the ground that Darby failed to establish their personal involvement in the constitutional violations that he alleges. Maj. Op. at 14. In doing so, the Majority overlooks the district court's errors and relevant case law.

A.    The complaint contains sufficiently specific allegations

The Majority finds Darby's complaint wanting for "not specify[ing] when Darby submitted the sick call requests, to whom he submitted them, or what information they

8

conveyed." Maj. Op. at 14. This broad-brush characterization is belied in large part by the complaint.

*Timing.* Darby alleges that he submitted his first sick call request on February 6, 2017. J. A. 15 (Compl. ¶ 13). In that sick call request, Darby "describ[ed], in detail, the pain and suffering he was experiencing." *Id.* Darby states further that he submitted "approximately 15 sick call requests from late February to late April." *Id.* (Compl. ¶ 23). After receiving no response to his repeated sick calls, he submitted his first written grievance in "mid-March." *Id.* (Compl. ¶ 27). He states that he submitted three to four such grievances "between mid-March and mid-April." *Id.* 17 (Compl. ¶ 28). In those grievances, he "described in detail the worsening pain and suffering he was experiencing and requested immediate medical attention." *Id.* 16 (Compl. ¶ 27). These are more than conclusory allegations; especially for an incarcerated individual, who may lack access to copy machines and other technology, the allegations strike me as sufficiently specific as to the timing of Darby's requests.

After Darby was transferred within centers at Rikers, he saw Dr. Hamilton in May, and—after receiving only a basic dental cleaning and no treatment—he submitted "another sick call request in mid-June." J. A. 18 (Compl. ¶ 38). In this request, he again "describ[ed] his pain and symptoms and requested immediate medical care." *Id.* Darby filed three additional sick call requests in June. *Id.* (Compl. ¶ 39). Surely this is specific enough a timeline to support Darby's allegations.

*Information Conveyed.* The Majority's description of Darby's allegations might leave one with the impression that Darby did not specify the symptoms he was experiencing in his written communications to prison authorities throughout this time period. I see no basis for this conclusion. In the complaint, Darby describes his symptoms in detail: he had "gum inflammation in his right cheek area" that "disrupted [his] everyday functions such as eating, talking and sleeping." J. A. 14-15 (Compl.

9

¶¶ 10-11). He suffered from "sleeplessness, difficulty chewing, difficulty brushing his teeth, and mumbled speech." *Id.* (Compl. ¶ 14). He repeats that "his gums were causing him pain," that the pain "was getting increasingly worse," and that it was a "shooting pain" in his gum. *Id.* 15-17 (Compl. ¶¶ 18, 25, 36). I see no basis to discount the reasonable inference arising from Darby's complaint that he described the same in his grievances and sick call requests.

The Majority nevertheless assumes that Darby's sick call requests did not describe "the seriousness of Darby's condition in such a way that the Doe Defendants knew or should have known that doing nothing would risk substantial harm." Maj. Op. at 15. And yet, Darby's complaint alleges that he described his symptoms "in detail" to prison officials. J. A. 15 (Compl. ¶ 13 ("Darby completed a 'sick call' request in writing by describing, in detail, the pain and suffering he was experiencing[.]")). Again, he alleges that he "suffered from pain, inflammation, swelling, inability to chew, sleeplessness, and impaired speech due to pain." *Id.* 16 (Compl. ¶ 23). Four paragraphs later, he alleges that "[i]n his grievances, Mr. Darby described in detail the worsening pain and suffering he was experiencing, and requested immediate medical attention." *Id.* (Compl. ¶ 27).

Contrary to the Majority's assertion, then, it is in my view the only reasonable reading of his complaint that his sick call requests did, in fact, describe the same symptoms that he described in detail, in his complaint. The complaint provides no reason to believe that Darby's sick call requests were not as detailed and specific as his description of symptoms in his complaint: after all, they were intended to get the care that he was being denied. That Darby did not repeat verbatim in his complaint what he wrote in each of his more than 15 sick call requests does not mean we are free to ignore his allegations that in those requests he described detailed, and worsening, symptoms. Taking Darby's allegations as true, a reasonable jury could infer that one or more prison

10

officials supervising the medical care program for inmates at Rikers Island were aware of Darby's serious medical needs and nevertheless did nothing to arrange for adequate treatment.[6]

*Who received notice of Darby's plight.* As to the issue of to whom Darby submitted the sick call requests, the Majority reasons that we would have to impermissibly assume that the Doe Defendants received Darby's sick calls for his complaint to survive a motion to dismiss. The Majority suggests that Darby "has provided no factual basis that would allow us to infer receipt" of Darby's sick call requests. Maj. Op. at 16. But in so reasoning, the Majority draws an inference against Darby. Our precedents suggest, rather, that the inference should be drawn in his favor.

The complaint alleges that Darby submitted his sick call requests to "a correctional officer, who was responsible for then submitting the request to the 'medical' intake mailbox." J.A. 15 (Compl. ¶ 13). Darby also alleges that he filed his written grievances "in the 'grievance box.'" *Id.* 16 (Compl. ¶ 27). This describes in adequate detail the methods in the facility for prisoners to submit requests and grievances: it identifies specific locations designated to deposit and convey the requests and grievances and alleges that he followed that procedure. Under *Grullon v. City of*

---

[6] The Majority contends that, if the Doe Defendants knew that Darby had already seen Dr. Greenman, it "would hardly seem unreasonable for them not to respond" to his repeated requests for further treatment because those requests "would be referred to a dentist anyway." Maj. Op. at 15 n.5. This gloss on the complaint rests on inferences drawn against Darby and in favor of the John Does that we are not at liberty to make—namely, that they did not follow up on Darby's requests based on a reasonable belief that he was seeing Dr. Greenman, who was providing adequate treatment. Darby alleges that after February 17, 2017, he did not see Dr. Greenman again. Darby also alleges that, after his last visit with Dr. Greenman and through late April, he submitted at least 15 sick call requests for medical attention. The complaint thus provides no basis for presuming that the Doe Defendants thought Darby was continuing to receive any medical attention. An entirely reasonable inference, in my estimation, is that the Doe Defendants knew that Darby was not receiving effective—or indeed any—treatment yet still did nothing to inquire or secure adequate treatment for him.

*New Haven*, 720 F.3d 133 (2d Cir. 2013), no more is needed to support an inference that the requests and grievances were then transmitted, as prison procedures provide, to the appropriate official.

The Majority's contention that these allegations are insufficient to support a reasonable inference that Darby's sick call requests were received by the appropriate prison official is based on a misreading of *Grullon v. City of New Haven*. *See* Maj. Op. at 16-17. In *Grullon*, this Court vacated a dismissal under Rule 12(b)(6) of the prisoner plaintiff's claims against the prison's Warden. *See* 720 F.3d at 135-36. We reasoned:

> [a]t the pleading stage, even if Grullon had no knowledge or information as to what became of his Letter after he sent it, he would be entitled to have the court draw the reasonable inference—if his amended complaint contained factual allegations indicating that the Letter was sent to the Warden at an appropriate address and by appropriate means—that the Warden in fact received the Letter, read it, and thereby became aware of the alleged conditions of which Grullon complained.

*Id.* at 141. Here, Darby's complaint alleges that he submitted his sick call requests to a correctional officer "responsible" for submitting said requests to the medical intake box. J.A. 15. We have no basis at this stage to infer against Darby that he did not act on the correct procedure for submitting sick calls or grievances at the facilities, and the Majority identifies none.[7]

Accordingly, having pleaded sufficient facts to support the inference that he submitted his sick calls and grievances through appropriate means, Darby is entitled to the inference that prison officials "in fact received" those grievances, and "thereby

---

[7] The State, on behalf of the Doe Defendants, has not identified any deficiencies in Darby's allegations regarding his method of submitting his grievances and sick calls.

became aware of the alleged conditions of which [Darby] complained." *Grullon*, 720 F.3d at 141.

Furthermore, we have repeatedly affirmed that the level of personal involvement of prison officials is a "question of fact." *Id.* at 140. Accordingly, "when a *pro se* plaintiff brings a colorable claim against supervisory personnel, and those supervisory personnel respond with a dispositive motion grounded in the plaintiff's failure to identify the individuals who were personally involved, under circumstances in which the plaintiff would not be expected to have that knowledge, dismissal should not occur without an opportunity for additional discovery." *Id.* at 141 (quoting *Davis v. Kelly*, 160 F.3d 917, 922 (2d Cir. 1998)). Discovery to uncover the identities of those responsible for responding to Darby's sick calls was ongoing when the district court dismissed his complaint. Darby, who was then incarcerated, cannot be presumed to have been in a position to identify which prison officials at a large facility like Rikers were responsible for receiving and responding to his sick call requests. *See Valentin v. Dinkins*, 121 F.3d 72, 75 (2d Cir. 1997) (recognizing the difficulty a *pro se* and incarcerated plaintiff may have in identifying a defendant before filing a § 1983 action).

Thus, the issue of whether Darby's complaints reached the Doe Defendants is a "factual issue[] . . . that likely cannot be resolved without development of a factual record." *Grullon*, 720 F.3d at 141. Therefore, the district court erred by dismissing the complaint against the Doe Defendants on the ground that Darby failed adequately to allege the officials' personal knowledge and involvement.

In my view, Darby's complaint states a claim against the Doe Defendants. His allegations evince a serious, escalating, and urgent medical need that he brought to the attention of the Doe Defendants according to the prison's prescribed procedures, but

about which they took no action for months.[8] Furthermore, with plausible allegations of wrongdoing but without any factual record regarding which prison officials were involved and how they responded to Darby's sick call requests, we have no basis to determine whether those requests were negligently disregarded, intentionally ignored, or, perhaps, simply handled belatedly.

It may be that discovery would reveal that Darby's sick calls were responded to—the record does not tell us, but perhaps the needed referral was arranged, but delayed, as the district court speculated. But that speculation is an inference drawn against Darby, and, like the other inferences on which the Majority relies, we are not permitted to rely on it at this stage of the proceedings.

B.       Dismissal as to the Doe Defendants was procedurally premature

The Majority disregards the additional procedural error infecting the district court's dismissal of the action against the Doe Defendants: it dismissed that portion of the action before the Doe Defendants had been served or filed any kind of response. This Court has consistently vacated district courts' *sua sponte* dismissal of prisoners' claims before service of process is made and the state has filed an answer. *McEachin v. McGuinnis*, 357 F.3d 197, 200-01 (2d Cir. 2004). In some cases, the answer can be expected to identify any Doe defendants and to enable the plaintiff to serve and proceed against them thereafter. As we have commented elsewhere, "*Sua sponte* dismissal of a *pro se* complaint prior to service of process is a draconian device, which is warranted only when the complaint lacks an arguable basis either in law or fact. Where a colorable claim is made out, dismissal is improper prior to service of process and the defendants'

---

[8] *Cf. Aikens v. Rao,* No. 13 Civ. 1088, 2015 WL 5919950, at *2 (W.D.N.Y. Oct. 9, 2015) (allegation that a prison medical system received sick call requests and ignored or disregarded them is "sufficient for a reasonable jury to conclude that [defendant nurse administrator] knew that plaintiff was in severe pain and acted deliberately to deny him treatment").

14

answer." *Id.* at 200-01; *see also Harnage v. Lightner*, 916 F.3d 138, 142 (2d Cir. 2019) ("*Sua sponte* dismissal of *pro se* prisoner petitions which contain non-frivolous claims . . . is disfavored by this Court."); *Massop v. Coughlin*, 770 F.2d 299, 301 (2d Cir. 1985) ("We are again constrained to repeat that we strongly disfavor sua sponte dismissals of *pro se* prisoner petitions before service of process and the filing of a response by the state.").

Despite this Court's repeated cautions in this regard, the district court expansively construed the motion to dismiss brought by Dr. Greenman's counsel as applying to all Defendants, including Dr. Hamilton and the Doe Defendants, even though the Doe Defendants had not yet been served and were not represented by Dr. Greenman's counsel. This error is especially concerning because the letter brief filed by Dr. Greenman's counsel made no mention of the Doe Defendants and did not argue that the complaint failed to establish personal knowledge on their part—the ground on which the district court based its dismissal and on which the Majority now relies. This ruling, too, conflicts with our Court's precedent. *See Nance v. Kelly*, 912 F.2d 605, 607 (2d Cir. 1990) (reversing the district court's *sua sponte* dismissal of the plaintiff's *pro se* complaint as frivolous because "[s]o long as the in forma pauperis plaintiff raises a cognizable claim, dismissal on the basis of factual deficiencies in the complaint must wait until the defendant attacks the lack of such details on a Rule 12(b)(6) motion"). The district court's dismissal of Darby's complaint as to the Doe Defendants was thus premature.

## V.    Some general observations

Unfortunately, Darby's experience with such patently inadequate dental care does not appear to be unusual for many incarcerated individuals. Our Court and courts in our Circuit are all too familiar with troubling claims from inmates regarding inadequate dental care. *See, e.g.*, *Gaffney*, 805 F. App'x at 57 (prison dentist "evinced [a]

15

conscious disregard" of inmate's pain during extraction by ignoring cries of pain "and continuing to 'dig' and stab' the area); *Chance*, 143 F.3d at 702 (prison dentists' "inadequate treatment" led to "at least one and possibly three of [plaintiff's] teeth degenerat[ing] to the point of requiring extraction."); *Harrison*, 219 F.3d at 134 (prison officials "refused to treat a cavity in one tooth unless [plaintiff] consented to the extraction of another tooth"); *Dean v. Coughlin*, 804 F.2d 207, 208 (2d Cir. 1986) (remedial plan needed to fix a "pattern of deliberate indifference by the defendants to . . . inmates' serious dental needs"); *Sharma v. D'Silva*, 157 F. Supp. 3d 293, 301 (S.D.N.Y. 2016) (prison dentists failed to ensure plaintiff was seen by a specialist for reconstructive surgery, and improperly ground and over-shaved plaintiff's teeth without his consent, aggravating his condition and causing severe pain); *Williams v. Jacobson*, No. 15 CV 28 (VB), 2016 WL 2733136, at *4-5 (S.D.N.Y. May 9, 2016) (prison officials improperly delayed fixing plaintiff's broken dentures for over 18 months when dentures caused serious pain by cutting his upper gums whenever he ate).[9]

In the course of a recent federal lawsuit, it was revealed that the Michigan Department of Corrections required prisoners to be incarcerated for two years before receiving any "routine" dental procedure, and as result, incarcerated persons' otherwise treatable dental conditions, such as periodontal disease, worsened significantly over the two-year waiting period, causing "gratuitous pain, loss of bone, and tooth loss." *Dearduff v. Washington*, 330 F.R.D. 452, 456-57 (E.D. Mich. 2019) (granting class certification in part).[10] Lack of sufficient dental care in prison has been an issue in state

---

[9] Not all claims of inadequate dental care have merited treatment as a constitutional violation, of course. *See, e.g.*, *Gomez v. Cnty. of Westchester*, 649 F. App'x 93 (2d Cir. 2016) (summary order); *Partee v. Wright*, 335 F. App'x 85 (2d Cir. 2009) (summary order).

[10] *See also* Keri Blakinger, 'I Have No Teeth': Michigan Prisoners Say Long Wait to See Dentist Is Inhumane, The Marshall Project (July 22, 2021, 6:00 AM), *available at:* https://www.themarshallproject.org/2021/07/22/i-have-no-teeth-michigan-prisoners-say-long-

facilities as well. *See, e.g.*, *Parsons v. Ryan*, 912 F.3d 486, 493 (9th Cir. 2018) (Arizona); Order, *Parsons v. Ryan*, 2:12-cv-00601-PHX-ROS (D. Ariz. July 16, 2021) (rescinding stipulated settlement with the Arizona Department of Corrections because the prison system failed to improve its provision of physical, mental, and dental health care over a six-year period).

In my view, we owe incarcerated persons such as Darby care that is, at the very least, not deliberately indifferent to their serious medical and dental conditions.

## CONCLUSION

For over four months while incarcerated at Rikers Island, Darby experienced severe gum pain from an almost golf-ball sized abscess in his mouth. He had trouble sleeping, eating, and talking, and lost twenty pounds as a result. As we have commented before, "Any person who has spent a night tossing and turning in suffering from an abscessed tooth knows that dental pain can be excru[c]iatingly severe." *Chance*, 143 F.3d at 702. Although he saw two prison dentists and filed over 15 sick call requests that described his symptoms in detail, Darby received no real care for a condition that was eminently treatable by gum surgery. Instead, one dentist offered a tooth extraction; the other, a dental cleaning.

I am concerned that the Majority's decision affirming the district court's dismissal of Darby's complaint may work to immunize the relevant prison officials from liability in Darby's and in other cases. In my view, the course of events specifically alleged by Darby could—if borne out by evidence—reasonably support a determination that the officials and dentists were deliberately indifferent to his serious medical needs.

---

wait-to-see-dentist-is-inhumane; Keri Blakinger, Toothless Texas inmates denied dentures in state prison, Houston Chron. (Sept. 23, 2018, 8:10 AM), *available at*: https://www.chron.com/news/houston-texas/houston/article/Toothless-Texas-inmates-denied-dentures-in-state-13245169.php.

The district court erred by dismissing his complaint under Rule 12(b)(6), and I believe the Majority errs now by affirming that dismissal.

I respectfully dissent.