*Mid-New York Environ. v. Dragon Springs*

In the

# United States Court of Appeals

For the Second Circuit

———————

August Term, 2024

(Argued:  March 20, 2025      Decided:  September 16, 2025)

Docket No. 24-2451

———————

MID-NEW YORK ENVIRONMENTAL AND SUSTAINABILITY PROMOTION COMMITTEE, INC., doing business as NYENVIRONCOM, ROBERT MAJCHER, GRACE WOODARD, ALEX SCILLA,

*Plaintiffs-Appellants*,

–v.–

DRAGON SPRINGS BUDDHIST, INC.,

*Defendant-Appellee.*[*]

———————

Before:      SACK, ROBINSON, and PÉREZ, *Circuit Judges*.

———————

Plaintiffs-Appellants appeal from a judgment of the United States District Court for the Southern District of New York (Karas, *J.*) dismissing their claims against Defendant-Appellee Dragon Springs Buddhist, Inc. ("Dragon Springs") under the Clean Water Act ("CWA").

Dragon Springs operates a large property with inhabitants in Deerpark, New York.  Plaintiffs, residents and property owners in the area

---

[*] The Clerk's office is respectfully directed to amend the caption as reflected above.

and an organization of which they are members, enjoy using the nearby waters for recreational purposes. Plaintiffs allege that, due to ongoing construction activity by Dragon Springs and inadequate wastewater treatment, Dragon Springs has been discharging stormwater and wastewater containing the bacteria fecal coliform to the surface waters surrounding its property in excess of legal limits and in violation of the CWA.

Under 33 U.S.C. § 1365(b), a citizen seeking to sue for a CWA violation must provide notice of the alleged CWA violation to regulators and the alleged violator at least 60 days before filing suit; the required contents of that notice are set forth in 40 C.F.R. § 135.3(a). The district court dismissed Plaintiffs' complaint on the ground that their pre-suit notice was inadequate.

The parties disagree as to whether the notice requirement in 33 U.S.C. § 1365(b) is a jurisdictional requirement and as to whether Plaintiffs adequately noticed their claims. We hold that § 1365(b) is not a requirement that affects courts' subject matter jurisdiction. We also conclude that the pre-suit notice Plaintiffs provided to Dragon Springs here was sufficient to inform Dragon Springs of their claims.

Accordingly, we VACATE the district court's September 11, 2024 judgment and REMAND for further proceedings consistent with this opinion.

_____

E. CHRISTOPHER MURRAY (Elizabeth S. Sy, *on the brief*), Rivkin Radler LLP, Uniondale, NY, *for Plaintiffs-Appellants*.

BRENDAN M. GOODHOUSE (Michael V. Caruso, Joshua J. Grauer, *on the brief*), Cuddy & Feder LLP, White Plains, NY, *for Defendant-Appellee.*

_____

2

ROBINSON, Circuit Judge:

Plaintiffs-Appellants appeal from a September 11, 2024 judgment of the United States District Court for the Southern District of New York (Karas, *J.*) dismissing their Clean Water Act ("CWA") claims against Defendant-Appellee Dragon Springs Buddhist, Inc. ("Dragon Springs").

In some circumstances, the CWA authorizes citizen suits to enforce effluent standards or limitations.  33 U.S.C. § 1365.  One precondition to such suits is that the citizen plaintiffs issue a pre-suit notice of the alleged violation to state and federal regulators.  *Id.* § 1365(b).  The required contents of that notice are set forth in 40 C.F.R. § 135.3, and include "sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, [and] the date or dates of such violation."  40 C.F.R. § 135.3(a).

The district court dismissed Plaintiffs' suit on the ground that Plaintiffs' pre-suit notice to Defendant and regulators was inadequate under 33 U.S.C. § 1365(b) and 40 C.F.R. § 135.3(a).  For the reasons set forth below, we conclude that this pre-suit notice requirement is not jurisdictional, and that, in any event, Plaintiffs'

3

notice in this case included the necessary information to provide adequate notice of its claims. We accordingly VACATE the district court's judgment of dismissal and REMAND for further proceedings consistent with this opinion.

## BACKGROUND[1]

### I.  The Parties and the Property

Defendant-Appellee Dragon Springs Buddhist, Inc. ("Dragon Springs") is a nonprofit organization operated by the Falun Gong movement, which "promotes traditional Chinese philosophies and claims persecution by the People's Republic of China." App'x 11–12 ¶¶ 19–20.[2] Dragon Springs constructed a "large compound" (the "Property") in the Town of Deerpark, New York, which functions as the "world headquarters of the Falun Gong movement" as well as the headquarters for the Shen Yun "music and dance companies." *Id.* at 8 ¶ 1. The Property includes a performing arts center, schools, residential housing, temples, and a wastewater treatment plant.

---

[1] The following facts are taken from Plaintiffs' amended complaint ("Complaint") and any materials incorporated by reference therein, which we assume to be true for the purposes of this appeal. *See Darby v. Greenman*, 14 F.4th 124, 125 n.1 (2d Cir. 2021).

[2] In quotations from caselaw and the parties' briefing, this opinion omits all internal quotation marks, footnotes, and citations, and accepts all alterations, unless otherwise noted.

The Property is located in the "southern tier of the Shawangunk Mountains," and its "northeast side is a steep slope from the [Property] to the immediately adjacent Basher Kill and Neversink River." *Id.* at 9 ¶ 4. "The slope contains numerous gullies and pathways from the [Property] that . . . empty into" the nearby waters, which "are an integral part of the rural beauty of the [Deerpark] area, and provide recreational resources to residents and visitors alike." *Id.* at 12 ¶ 21. The Basher Kill empties into the Neversink River, which empties into the Delaware River.

Plaintiffs Robert Majcher, Grace Woodard, and Alex Scilla own property nearby and enjoy the area for recreational purposes and for its clean water. *See id.* at 11 ¶¶ 15–17. All three are members of Plaintiff Mid-New York Environmental Sustainability Promotion Committee, Inc.—which goes by the name NYenvironcom—a nonprofit "whose mission is to help create, build, and strengthen thoughtful land use policies and practices that encompass environmental, community, and economic values" that has members who live near the Property. *Id.* ¶¶ 14, 18.

## II. Fecal Coliform Discharge

"As a result of the individuals who occupy" the Property, Fecal Coliform (a bacteria) "is generated" there. *Id.* at 9 ¶ 3. There is a wastewater treatment plant

5

on the Property to "treat the wastewater . . . which contains Fecal Coliform," but the permit for the treatment plant prohibits discharge of the bacteria into the surface water near the property. *Id.*

Since around 2020 and "continuing to this day," Plaintiffs allege, "Dragon Springs has been discharging . . . polluted wastewater and storm water containing Fecal Coliform" from "point sources at the [Property] into the Basher Kill and Neversink River." *Id.* ¶ 5. And the discharges are "well beyond the limits" of Dragon Springs' "permits and applicable law." *Id.* Plaintiffs allege they have confirmed this discharge through water testing that shows "elevated levels of Fecal Coliform in waters immediately adjacent to the [Property], but not elevated levels in areas tested upstream." *Id.* According to Plaintiffs, this "discharge is the result of construction activity and an improperly maintained and operated wastewater treatment plant at the [Property]." *Id.*

Specifically, according to Plaintiffs, the permit issued to Dragon Springs by the New York State Department of Environmental Conservation ("DEC") does not allow for the discharge of Fecal Coliform from the Property to surface water. The permit allows only "discharge from the wastewater treatment plant at the [Property] to underground treatment systems" and "for the treated wastewater to [then] be discharged to subsurface groundwater." *Id.* at 18 ¶ 46. The amount of

6

Fecal Coliform that may be discharged into the groundwater "is restricted to . . . a daily mean of 200 parts per 100 ml during the months of May 1 through September 30." *Id.*

Moreover, in light of recent construction on the Property, Dragon Springs obtained a construction permit, which requires it "to comply with the requirements of its [DEC] Permit." *Id.* at 18–19 ¶ 47. According to Plaintiffs, the 200 parts per 100 ml limit is also mandated by New York regulation.

Despite these requirements, Plaintiffs allege:

> The amount of Fecal Coliform in the surrounding waters in August 2021 contained a daily mean of 726 parts of Fecal Coliform per 100 ml, over three times the permitted amount. . . .
>
> Testing done in July 2020 reflected Fecal Coliform amounts of 461 parts per 100 ml, [and] in August 2020 Dragon Springs discharged water with Fecal Coliform amounts of 290 parts per 100 ml.
>
> In addition, the Fecal Coliform amounts in the surrounding water were on August 8, 2022, 2419.6 parts per 100 ml; on October 14, 2022[,] 2419.6 parts per 100 ml; on November 9, 2022[,] 344.8 parts per 100 ml; on December 13, 2022[,] 1396 parts per 100 ml; on April 18, 2023[,] 1050 parts per 100 ml; and on July 27, 2023[,] 517.2 parts per 100 ml.

*Id.* at 19 ¶ 50.

Plaintiffs allege that the discharge occurs "through point sources at the [Property] 600 to 1,000 feet southwest of the bridge at Galley Hill Road into the waters of the United States." *Id.* at 20 ¶ 53.

### III. Procedural History

*A. First Action*

In November 2021, Plaintiffs provided Dragon Springs and certain regulatory administrators notice of their intent ("NOI") to sue Dragon Springs for alleged excessive effluent discharge under the CWA.[3] Subsequently, following the expiration of a statutory 60-day notice window under the CWA, Plaintiffs filed suit against Dragon Springs in January 2022.

Ruling that the NOI was deficient under the CWA, the district court dismissed Plaintiffs' complaint without prejudice for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). *See Mid-New Year Environmental and Sustainability Promotion Committee, Inc. v. Dragon Springs Buddhist, Inc.*, 647 F. Supp. 3d 286, 291–92 (S.D.N.Y. 2022) ("*Dragon Springs I*") (Briccetti, *J.*).

---

[3] We reference this NOI, which was included in Plaintiffs' complaint in a *prior* action, only for context; we do not substantively rely on it in this opinion.

Specifically, the district court determined that the NOI was deficient because it did not "specify, or include facts which would enable defendant to determine[] which standard, limitation, or order defendant allegedly violated." *Id.* at 291. In addition, according to the court, the NOI did not "contain specific facts, such as the fecal coliform threshold allegedly exceeded or the nature of the unlawful discharge, which could have helped [Dragon Springs] pin down which standard or permit they were accused of violating." *Id.* at 291–92. The court noted that "the NOI might have been sufficient had it contained the amended complaint's allegation that [Dragon Springs] discharged water containing daily mean in excess of 200 parts of Fecal Coliform permitted under [Dragon Springs'] [p]ermit" or had it included the results of the tests performed by Plaintiffs prior to filing suit. *Id.* at 292.

Though the district court concluded that a sufficient NOI was a jurisdictional requirement under the CWA, it also stated that it would have dismissed the complaint for failing to state a claim pursuant to Rule 12(b)(6) based on the same deficiencies. *Id.* at 292 n.6.

Plaintiffs filed a notice of appeal of that decision in January 2023 but did not perfect their appeal, which this Court thus dismissed.

*B. Second NOI*[4]

In January 2023, Plaintiffs sent Dragon Springs and regulatory authorities a new NOI. In the NOI, Plaintiffs asserted that "[b]eginning in 2020 and continuing to this day, Dragon Springs has been discharging from point sources at the [Property] into the Basher Kill and Neversink River polluted wastewater and storm water containing Fecal Coliform," resulting from "construction activity and an improperly maintained and operated wastewater treatment plant." App'x 409. The construction activity "has been ongoing . . . since the spring of 2021," *id.* at 408, and the discharge, the NOI continued, "has been confirmed through water testing verified by a licensed laboratory," *id.* at 409.

According to the NOI, the permit issued to Dragon Springs by DEC "does not allow for the discharge of Fecal Coliform . . . to the surrounding surface water" but instead allows only "discharge from the waste water treatment plant . . . to underground treatment systems" and for that treated wastewater to then "be discharged to subsurface groundwater." *Id.* The amount of Fecal Coliform "that may be discharged into the groundwater is restricted to a[n] Effluent Limit to a

---

[4] The parties do not dispute that the most recent NOI provided by Plaintiffs in relation to the instant suit is incorporated by reference in Plaintiffs' complaint and is thus appropriately considered on a Rule 12(b)(6) motion. *See, e.g., Halebian v. Berv*, 644 F.3d 122, 130 n.7 (2d Cir. 2011) ("[I]t is well established that on a [Rule 12(b)(6)] motion to dismiss . . . the court may also rely upon documents attached to the complaint as exhibits and documents incorporated by reference in the complaint.").

daily mean of 200 parts per 100 ml during the months of May 1 through September 30." *Id.* According to the NOI, the permit received by Dragon Springs for its construction activity incorporates the effluent discharge limits in the DEC permit. Separately, according to the NOI, New York regulations limit "the amount of Fecal Coliform in surface water to 200 parts per 100 ml." *Id.*

Mirroring the allegations in the complaint in this case, Plaintiffs included in the NOI testing results:

> The amount of Fecal Coliform in the surrounding waters in August 2021 contained a daily mean of 726 parts of Fecal Coliform per 100 ml . . . . Testing done in July 2020 reflected Fecal Coliform amounts of 461 parts per 100 ml, [and] in August 2020 Dragon Springs discharged water with Fecal Coliform amounts of 290 parts per 100 ml. In addition, the Fecal Coliform amounts in the surrounding water were on August 8, 2022, 2419.6 parts per 100 ml; on October 14, 2022[,] 2419.6 parts per 100 ml; on November 9, 2022[,] 344.8 parts per 100 m[l]; and December 13, 2022[,] 1396 parts per 100 ml.

*Id.* at 410.

The NOI describes "gullies and pathways from the [Property] that are point sources that empty into" the Basher Kill and Neversink River, *id.* at 408, and specifies that Dragon Springs' allegedly unlawful wastewater and stormwater discharge occurs "through point sources . . . 600 to 1,000 feet southwest of the bridge at Galley Hill Road into the waters of the United States." *Id.* at 410.

11

*C. This Litigation*

Plaintiffs subsequently filed this action, bringing claims under the CWA for Dragon Springs' alleged excessive discharge of Fecal Coliform as well as a private nuisance claim under New York law. The district court granted Dragon Springs' motion to dismiss, determining that "as before," the NOI was deficient "because it lacks sufficient information to enable [Dragon Springs] to identify any alleged [CWA] violations." *Mid-New York Environmental and Sustainability Promotion Committee, Inc. v. Dragon Springs Buddhist, Inc.*, No. 23-cv-4870, 2024 WL 4150206, at *6 (S.D.N.Y. Sept. 11, 2024) ("*Dragon Springs II*") (Karas, *J.*). The district court rested its conclusion primarily on two grounds.

First, the court determined that the NOI was "illogical" on its "face." *Id.* According to the court, the NOI's "clearest statement" of a CWA violation was that Dragon Springs was discharging Fecal Coliform through its wastewater and stormwater runoff into the surrounding surface water in excess of the limitations in its permits. *Id.* at *6–7. The court concluded that the relevant permits identified in the NOI do not "actually prohibit[] surface water discharges of Fecal Coliform." *Id.* at *7. "As for wastewater," according to the court, Dragon Springs' permit "does not contain any limitation on such discharges." *Id.* And, "for stormwater," the relevant permit "authorizes stormwater discharges to surface

12

waters . . . subject to certain conditions." *Id.* Accordingly, the court concluded that the NOI did not "identify the specific standard or limitation . . . alleged to have been violated" and thus "fail[ed] to adequately notice any theory that [Dragon Springs] violated its permits." *Id.*

Second, the court determined that the NOI failed to "identify a point source," *id.* at *9, which it defined as "physical structures and instrumentalities that systematically act as a means of conveying pollutants from an industrial source to navigable waterways," *id.* at *8. The court concluded that the NOI's identification of a "steep slope on the northeast side" of the Property and to point sources "600 to 1,000 feet southwest of the bridge at Galley Hill Road" did not "come close" to identifying a point source. *Id.*

This time, the court took "no position" as to whether a sufficient NOI is a jurisdictional requirement under the CWA and instead dismissed the complaint with prejudice pursuant to Rule 12(b)(6). *Id.* at *5 n.4.

## DISCUSSION

The parties dispute whether Plaintiffs provided a NOI sufficient to survive dismissal under the CWA and, if not, whether any failure to do so is jurisdictionally fatal to Plaintiffs' claims. For context, we first discuss the CWA

13

generally, then we turn to the jurisdictional question and the substantive sufficiency of Plaintiffs' NOI under the CWA.

### I.  Clean Water Act

We start with an overview of the CWA, the "primary function" of which "is to regulate the discharge of pollutants into navigable waters." *Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York*, 273 F.3d 481, 485–86 (2d Cir. 2001), *adhered to on reconsideration*, 451 F.3d 77 (2d Cir. 2006). "Although the Act contains the lofty goal of eliminating water pollutant discharges altogether, the regulatory regime it creates requires principally that discharges be regulated by permit, not prohibited outright." *Id.* at 486. As such, the "discharge of any pollutant" is "unlawful," except as in compliance with specific sections of the CWA, including Section 1342. 33 U.S.C. § 1311(a). Section 1342 establishes the "National Pollutant Discharge Elimination System" ("NPDES"), 33 U.S.C. § 1342, and "provides for the issuance of discharge permits . . . that allow the holder to discharge pollutants at levels below thresholds incorporated in the permit," *Catskill*, 273 F.3d at 486.

States may administer their own permit programs in accordance with § 1342. 33 U.S.C. § 1342(b). In New York, the NPDES program is administered by the DEC and "referred to as the State Pollution Discharge Elimination System

14

('SPDES')." *Catskill*, 273 F.3d at 486 (citing N.Y. Envtl. Conserv. Law §§ 17–0105(13), 17–0701)).

To enforce the CWA, private citizens can bring actions against any person "who is alleged to be in violation of (A) an effluent standard or limitation under [the CWA] or (B) an order issued by the Administrator [of the EPA] or a State with respect to such a standard or limitation." 33 U.S.C. § 1365(a). But "No action may be commenced . . . prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order." *Id.* § 1365(b)(1)(A). Within that 60-day window, if a "state or federal enforcement agency" chooses to bring a civil action or administrative enforcement proceeding against the alleged violator, any citizen suit is preempted and "must be dismissed." *Catskill*, 273 F.3d at 486. In short, a plaintiff must give a prospective defendant and relevant administrative authorities notice of their claims before filing suit.

## II.    Jurisdiction

There is an open question in our Circuit as to whether the CWA's notice requirement is jurisdictional or simply a condition precedent to filing suit. *See, e.g.*, *Building and Const. Trades Council of Buffalo v. Downtown Development, Inc.*, 448

F.3d 138, 158 n.14 (2d Cir. 2006) (assuming without deciding that "non-compliance with the pre-suit notice provisions of the . . . [CWA] does not affect a federal court's subject matter jurisdiction"). Considering the Supreme Court's treatment of a similar notice requirement in connection with a different environmental citizen-suit provision, as well as subsequent Supreme Court guidance as to the distinction between jurisdictional restrictions and other claim processing requirements, we conclude that the pre-suit notice provision here is not a jurisdictional requirement.

In *Hallstrom v. Tillamook County*, the Supreme Court considered an analogous notice provision in the Resource Conservation and Recovery Act of 1976 ("RCRA"). 493 U.S. 20, 22–23 (1989). Similar to the CWA, RCRA's notice provision provides that a plaintiff seeking to bring a citizen enforcement suit must notify a prospective defendant, the relevant state, and the Environmental Protection Agency of its intent to sue 60 days prior to filing suit. 42 U.S.C. § 6972(b)(1). When analyzing the sufficiency of a notice under RCRA, the Supreme Court held that "the notice and 60-day delay requirements are mandatory conditions precedent to commencing suit under the RCRA citizen suit provision" and concluded that it "need not determine whether § 6972(b) is jurisdictional in the strict sense of the term." *Hallstrom*, 493 U.S. at 31.

16

Relying primarily on *Hallstrom*, courts in this circuit have expressed uncertainty over whether the CWA's notice requirement is jurisdictional. *See, e.g.*, *New York v. General Electric Company*, 592 F. Supp. 291, 301 (N.D.N.Y. 1984) (noting that it is "apparent that the rule in this circuit embodies the principle that such notice requirements," like the one contained in the CWA, are "not jurisdictional"); *Riverkeeper, Inc. v. Coeymans Recycling Center, LLC*, No. 1:20-CV-1025, 2022 WL 17819738, at *12 (N.D.N.Y. Dec. 20, 2022) ("[A]uthority exists for the point of law that, if the mandatory 60-days notice required by [the CWA] [is] untimely . . . that defect could be jurisdictional in nature."); *City of New York v. Anglebrook Ltd. Partnership*, 891 F. Supp. 900, 906 n.9 (S.D.N.Y. 1995) ("Whether defective notice is jurisdictional or merely procedural has received mixed treatment."); *City of Newburgh v. Sarna*, 690 F. Supp. 2d 136, 152 (S.D.N.Y. 2010) ("District courts in this Circuit . . . have consistently treated the CWA's notice requirement as a question of subject-matter jurisdiction."); *Dragon Springs I*, 647 F. Supp. 3d at 291–92

(dismissing Plaintiffs' claims for lack of subject matter jurisdiction). Circuit courts are similarly divided on this issue.[5]

Since *Hallstrom*, however, the Supreme Court has "tried . . . to bring some discipline to the use of" the "jurisdictional label" because "the consequences that attach to [it] may be . . . drastic." *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011). It has "urged that a rule should not be referred to as jurisdictional unless it governs a court's adjudicatory capacity." *Id.* To "ward off profligate use of the term 'jurisdiction,'" the Supreme Court has adopted a "readily administrable bright line for determining whether to classify a statutory limitation as jurisdictional." *Sebelius v. Auburn Regional Medical Center*, 568 U.S. 145, 153 (2013). We "inquire whether Congress has 'clearly stated' that the rule is jurisdictional; absent such a clear statement . . . [we] should treat the restriction as nonjurisdictional in character." *Id.*

---

[5] The First, Fifth, and Eleventh Circuits have held that the notice requirement is nonjurisdictional. *See Cebollero-Bertran v. Puerto Rico Aqueduct & Sewer Authority*, 4 F.4th 63, 72–73 (1st Cir. 2021);*Lockett v. E.P.A.*, 319 F.3d 678, 682–83 (5th Cir. 2003); *American Canoe Association, Inc. v. City of Attalla*, 363 F.3d 1085, 1088 (11th Cir. 2004). The Third, Sixth, Seventh, Ninth, and Tenth Circuits have reached the opposite conclusion. *See Public Interest Research Group of New Jersey, Inc. v. Windall*, 51 F.3d 1179, 1189 n.15 (3d Cir. 1995); *Board of Trustees of Painesville Tp. v. City of Painesville, Ohio*, 200 F.3d 396, 400 (6th Cir. 1999); *Atlantic States Legal Foundation, Inc. v. Stroh Die Casting Co.*, 116 F.3d 814, 820 (7th Cir. 1997); *Waterkeepers Northern California v. AG Industrial Mfg., Inc.*, 375 F.3d 913, 916 (9th Cir. 2004); *Karr v. Hefner*, 475 F.3d 1192, 1200 (10th Cir. 2007).

Though "Congress . . . need not use magic words in order to speak clearly on this point," *Henderson*, 562 U.S. at 436, a statute must typically "speak in jurisdictional terms or refer . . . to the jurisdiction of the district courts" to provide a "clear statement of Congress's intent to limit the power of the courts rather than the rights of litigants," *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 127 (2d Cir. 2011). A provision's "placement within [an act]" may also "provide such an indication." *Henderson*, 562 U.S. at 439. For example, if a provision is situated in a subchapter titled "Jurisdiction," that would suggest that Congress intended that particular provision to have jurisdictional effect. *Id.*

At bottom, Congress must provide a "clear indication that it wants a rule to be jurisdictional." *Mickalis Pawn Shop*, 645 F.3d at 126. Even rules "that are important and mandatory should not be given the jurisdictional brand unless Congress has clearly indicated otherwise." *Id.* at 126–27; *see also Arbaugh v. Y&H Corporation*, 546 U.S. 500, 515–16 (2006).

In light of these principles, we conclude that the CWA's notice requirement is *not* jurisdictional. *First*, the notice provision does not speak in jurisdictional terms. Rather, it provides that "no action *may be commenced*" unless a plaintiff provides notice of the alleged violations 60 days prior to filing the action. 33 U.S.C. § 1365(b)(1)(A) (emphasis added). The statute does not state, for example, that the

19

district courts shall not have jurisdiction. *Cf., e.g., Matuszak v. Commissioner of Internal Revenue*, 862 F.3d 192, 196 (2d Cir. 2017) (holding that a provision in the bankruptcy code that states "[T]he Tax Court *shall have jurisdiction . . .* to determine the appropriate relief . . . *if* the petition is filed [timely]" is jurisdictional (emphases to statutory language added in *Matuszak*)).

And, in the prior subsection, the CWA makes clear that it is the plaintiff who "commence[s] a civil action." *Id.* § 1365(a) (except as otherwise provided, "any citizen may commence a civil action on his own behalf"). Thus, the proscription in § 1365(b)(1)(A) that "no action may be commenced" absent compliance with the notice requirement applies to *the plaintiff*, not the court. *See, e.g., United States ex rel. Hayes v. Allstate Insurance Company*, 853 F.3d 80 (2d Cir. 2017) (statutory rule providing that "no person other than the Government" may bring a certain action was not jurisdictional because the language "speaks only to who may bring a private action and when, but does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts").

*Second*, the notice provisions' placement in the statutory structure does not evince a clear indication that Congress intended the requirement to be jurisdictional. The provision appears in a subchapter titled "General Provisions," which does not speak to jurisdiction. And, within the citizen suit provision, § 1365,

20

there *is* a subsection titled "Authorization; *jurisdiction*."  *Id.* § 1365(a) (emphasis

added).  That provision states, in relevant part:

> [A]ny citizen may commence a civil action on his own
> behalf—
>
> > (1) against any person . . . who is alleged to be in
> > violation of (A) an effluent standard or limitation
> > under this chapter or (B) an order issued by the
> > Administrator or a State with respect to such a
> > standard or limitation . . .
>
> The district courts shall have jurisdiction, without regard
> to the amount in controversy or the citizenship of the
> parties, to enforce such an effluent standard or
> limitation, or such an order, or to order the
> Administrator to perform such act or duty, as the case
> may be, and to apply any appropriate civil penalties
> under section 1319(d) of this title.

*Id.*

Section 1365(a) shows that when Congress wanted to speak in jurisdictional

terms in the CWA, it did so explicitly.  The notice requirement here is *not* contained

within this "jurisdiction" subsection; it is in the *next* subsection, titled "Notice."

*Id.* § 1365(b).  In other words, the notice requirement is "in a separate provision

that does not speak in jurisdictional terms or refer in any way to the jurisdiction of

the district courts" and is thus not jurisdictional.  *Arbaugh*, 546 U.S. at 515.

Our conclusion is supported by the Supreme Court's decision in *Reed*

*Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010).  In *Reed Elsevier*, the Court considered

21

whether a provision in the Copyright Act requiring copyright holders to register their works before filing suit for infringement was jurisdictional. *Id.* at 157. The statute says that "no civil action for infringement . . . shall be instituted until preregistration or registration." 17 U.S.C. § 411(a). Warning against "drive-by jurisdictional rulings," *Reed Elsevier*, 559 U.S. at 161, the Court concluded that the provision was not jurisdictional because the text itself did not "clearly state[]" that the requirement is jurisdictional and because the registration requirement "is located in a provision separate from those granting federal courts subject-matter jurisdiction over those respective claims," *id.* at 163–64. Though not identical, the language at issue in *Reed Elsevier*—"no civil action . . . shall be instituted" until registration, 17 U.S.C. § 411(a)—resembles the notice requirement in the CWA that "no action may be commenced" until after a sufficient notice, 33 U.S.C. § 1365(b)(1)(A). As in *Reed Elsevier*, the CWA's notice provision lacks any jurisdictional flavor.

In sum, we hold that the CWA's notice requirement bears only on whether a plaintiff has properly stated a claim, and that a district court has subject matter jurisdiction over an action even in the absence of sufficient notice. *See Hayes*, 853 F.3d at 86; *see also Cebollero-Bertran v. Puerto Rico Aqueduct & Sewer Authority*, 4 F.4th 63, 72–73 (1st Cir. 2021) (concluding that the notice requirement is not

22

jurisdictional because "the statutory text at issue does not refer to jurisdiction, and it is located in the CWA notice subsection, rather than the jurisdiction subsection"); *Lockett v. E.P.A.*, 319 F.3d 678, 682–83 (5th Cir. 2003) (concluding the same because the notice requirement is "more procedural than jurisdictional"); *American Canoe Association, Inc. v. City of Attalla*, 363 F.3d 1085, 1088 (11th Cir. 2004) ("[T]he [CWA's] notice requirement is more procedural than jurisdictional.").

**III. Notice**

That brings us to the sufficiency of Plaintiffs' NOI. Dragon Springs primarily argues that the NOI did not sufficiently identify the "specific standard, limitation, or order" Dragon Springs violated, nor did it sufficiently identify the location of the alleged discharge. Appellee's Br. at 15. We disagree. Dragon Springs seeks to impose a more rigorous notice requirement than required by the language of the CWA, our own caselaw, and the legislative history underlying the notice requirement. Considering the contents of the NOI in this case, we conclude that Plaintiffs' NOI provides sufficient notice to Dragon Springs of the substance of Plaintiffs' claims.

*A. The NOI Requirement*

The CWA "does not describe the content of the required notice, but directs that notice shall be given in such manner as the [EPA] Administrator shall

23

prescribe by regulation." *Catskill*, 273 F.3d at 487 (quoting 33 U.S.C. § 1365(b)). In turn, the relevant EPA regulation provides the following:

> Notice regarding an alleged violation of an effluent standard or limitation or of an order with respect thereto, shall include sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice.

40 C.F.R. § 135.3(a).

As we explained in *Catskill*, with respect to the CWA's notice requirement, we generally "refuse[] to allow form to prevail over substance." *Catskill*, 273 F.3d at 487. The "notice and 60-day delay requirements allow a potential defendant to identify its own violations and bring itself into compliance voluntarily, thus making a costly lawsuit unnecessary," and they permit regulatory enforcers to bring their own actions. *Id.* at 488. To further those objectives, a notice need only be "sufficient to notify a reasonable person" of a plaintiff's claims. *Id.* at 489.

Specifically, "the NOI letter must differentiate pollutants from nonpollutants and one pollutant from another," particularly "in the context of a suit alleging discharges in excess of NPDES permit limitations, in which the defendant may be discharging some pollutants lawfully and others unlawfully."

24

*Id.* at 487. Thus, in *Catskill*, where a defendant argued that the notice was insufficient because it failed to identify each pollutant included in the ultimate complaint, we held that "to the extent the plaintiff intends to prosecute multiple violations involving multiple pollutants, each pollutant that will be the basis of such a claim must be set forth in the NOI letter." *Id.* at 488.

At oral argument, Dragon Springs took the position that the notice requirement plays a "gatekeeping" function for CWA claims and that the sufficiency of a notice should thus be evaluated under a standard that is "something greater than a [Rule] 12(b)(6) standard." Mar. 20, 2025 Oral Argument at 16:35–52, 22:18–30. But Dragon Springs' position is inconsistent with the legislative history of the notice provision, which makes clear that Congress did not intend for the requirement to be an onerous one:

> [S]uch regulations should reflect simplicity, clarity, and standardized form. *The regulations should not require notice that places impossible or unnecessary burdens on citizens but rather should be confined to requiring information necessary to give a clear indication of the citizens' intent.* These regulations might require information regarding the identity and location of [the] alleged pollut[er], a brief description of the activity alleged to be in violation, and the provision of law alleged to be violated.

S. Rep. No. 92–414, at 80 (1971) (emphasis added); *see also* H.R. Rep. No. 92–911 at 133 (1972) (describing that the regulations should "*not plac[e] unnecessary or*

*impossible burdens on complainants,*" and instead "should require information regarding the identity and location of the alleged pollut[er], a brief description of the activity alleged to be in violation, [and] the provision of law alleged to be violated"(emphasis added)).

Thus, we do not require a plaintiff—who may possess little information about a particular violation or have limited access to a potential defendant's property prior to initiating suit—to detail the specifics of their claim in a manner that would typically appear in an expert report following discovery. Rather, we consider "whether their notice letter served the purpose that Congress intended: To provide the recipient with effective, as well as timely, notice." *Public Interest Research Group of New Jersey, Inc. v. Hercules, Inc.*, 50 F.3d 1239, 1249 (3d Cir. 1995). Though "detailed information is helpful to the recipient of a notice letter . . . , such specificity is not mandated by the regulation." *Id.* at 1247; *see also Community Association for Restoration of the Environment v. Henry Bosma Dairy*, 305 F.3d 943, 953 (9th Cir. 2002) (noting that in requiring pre-suit notice, "Congress did not intend to unduly burden citizens by requiring them to basically carry out the job of the agency").

In other words, "We read the regulation to require just what it says: that the citizen provide enough information to enable the *recipient, i.e.*, [Dragon Springs],

[the] EPA, and/or the State, to identify the specific effluent discharge limitation which has been violated, including the parameter violated, the date of the violation, [where] it occurred, and the person or persons involved." *Hercules*, 50 F.3d at 1248 (emphasis in original); *see also* 40 C.F.R. § 135.3(a).

### B. *Plaintiffs' NOI*

Dragon Springs primarily argues that Plaintiffs' NOI failed to adequately identify the (1) allegedly violative activity and the standards it violated, and (2) the location of the discharge. We disagree with both claims.

### i. Offending Activity and Standards Violated

Contrary to Dragon Springs' argument, Plaintiffs' NOI was clear as to the offending activity and standards allegedly violated: Dragon Springs discharged stormwater and wastewater containing Fecal Coliform into nearby surface water in quantities exceeding 200 parts per 100 ml as a result of its "failure to properly maintain its waste water treatment plant and the construction activity at the [Property]." App'x 410. It allegedly did so without a permit, which would violate §§ 301(a) and 402 of the CWA.

Section 301(a), codified at 33 U.S.C. § 1311(a), prohibits discharge of *any* pollutant except in compliance with several other identified sections of the statute. The only exception that might come into play here is § 402, codified at 33 U.S.C.

§ 1342. That provision provides for the issuance of permits for discharge of pollutants. 33 U.S.C. § 1342. As noted in the NOI, the only potentially applicable permit here is Dragon Springs' SPDES permit issued by the New York DEC, which exercised delegated authority from the EPA to issue the permit.

The NOI recognizes that the SPDES permit does *not* allow for the discharge of water with elevated levels of Fecal Coliform to surrounding surface water; it allows discharges only from the wastewater treatment plant on the property to underground treatment systems and then allows discharge of the treated wastewater *to subsurface groundwater* limited to a daily mean of 200 parts of Fecal Coliform per 100 ml during the months of May 1 through September 30.

So even if the contamination of the surface waters adjacent to the Property came from subsurface groundwater rather than surface runoff, the *amount* of Fecal Coliform allegedly discharged was well in excess of the permitted level. All of this information—identification of both the discharged pollutant (Fecal Coliform) and the provisions violated (33 U.S.C. §§ 1311(a) and 1342)—is set forth in the NOI.

In addition, the NOI includes nine specific test results with corresponding dates corroborating the alleged substantial discharge which was well in excess even of Dragon Springs' permitted groundwater discharge allowance, to the extent that's relevant.

28

Moreover, the allegations in Plaintiffs' NOI closely mirror the allegations ultimately raised in their complaint. We need not decide whether Plaintiffs have sufficiently pled a CWA violation,[6] but we conclude the NOI was clearly sufficient to apprise Dragon Springs of the claims Plaintiffs ultimately brought.

Our determination that the notice adequately apprises Dragon Springs of the activities Plaintiffs challenge and the standards they allege Dragon Springs to have violated is consistent with persuasive authority from other courts. *See, e.g.*, *Hercules*, 50 F.3d at 1250 ("[W]e hold that a notice letter which includes a list of discharge violations, by parameter, provides sufficient information for the recipients of the notice to identify violations of the same type."); *City of Newburgh*, 690 F. Supp. 2d at 148 ("Plaintiff's Notice Letter clearly established that the alleged pollutant is untreated stormwater runoff into Brown's Pond. . . . Defendants . . . cannot credibly claim to have been confused about what they were accused of discharging in violation of their SPDES permit."); *Cebollero-Bertran*, 4 F.4th at 76 (holding that notice that informed relevant parties of "raw sewage from sanitary

---

[6] Dragon Springs argues in the alternative that we should affirm because Plaintiffs' allegations fail to state a claim for a CWA violation. Though we may in our discretion affirm on any basis supported by the record, *see Beijing Neu Cloud Oriental System Technology Co., Ltd. v. International Business Machines Corporation*, 110 F.4th 106, 113 (2d Cir. 2024), we decline to exercise that discretion and leave it to the district court to address that claim in the first instance.

manholes flowing into rain drainage that flows into [specific waterways]" provides sufficient notice of the plaintiff's claims).

In short, there is no doubt that the NOI at issue here adequately identifies Dragon Springs' allegedly violative activities, the allegedly improperly discharged pollutant, and the standards violated by that discharge.

ii. Location of Discharge

Dragon Springs contends that Plaintiffs must identify a specific "point source" for the discharge. A "point source" is a term of art in the CWA; it means "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." 33 U.S.C. § 1362(14). But the CWA regulation regarding the required contents of a NOI doesn't require identification of the discharge's point source; rather, it requires only that the NOI sufficiently inform Dragon Springs of the "location of the alleged violation." 40 C.F.R. § 135.3(a). And Plaintiffs' NOI here did that.

Plaintiffs specified in the NOI that the alleged discharge occurred "through point sources at the [Property] 600 to 1,000 feet southwest of the bridge at Galley Hill Road into the" Basher Kill and Neversink River since around March 2021.

30

App'x 410–11. And they reference "gullies and pathways from the [Property] that are point sources that empty into these waters." *Id.* at 408. Regardless of whether these descriptions identify "point sources"—a question we need not reach—it is sufficient to give notice to Dragon Springs, which has better information about and access to its own property, to enable it to investigate the claims. In a pre-suit notice, provided before Plaintiffs have an opportunity for discovery, no more is required. *See, e.g.*, *Benham v. Ozark Materials River Rock, LLC*, 885 F.3d 1267, 1274 (10th Cir. 2018) (notice sufficiently apprised the defendant of the locations of the alleged violations in a wetlands area because it referred to "a road [along the wetlands] identified by description and aerial photograph"); *Cebollero-Bertran*, 4 F.4th at 77 (notice that did not include the "precise origin" of the alleged release of pollutants was sufficient because the defendant possessed "maps, plans, and investigative tools to trace the source of the [alleged violation]"); *Ecological Rights Foundation v. Pacific Gas and Elec. Co.*, 713 F.3d 502, 519 (9th Cir. 2013) (notice sufficiently identified location where it alleged violations over "four counties" but identified representative sites and "referenced [defendant's] superior ability to ascertain the locations of other [sites] that might be at issue"); *South River Watershed Alliance, Inc. v. DeKalb County*, 69 F.4th 809, 817 n.8 (11th Cir. 2023) (notice

requirement met where notice identified defendant's "sewage spills by structure, cause, source, and date.").

Dragon Springs resists this conclusion, arguing that "[t]he NOI here informed its recipients that the Plaintiffs were claiming that Dragon Springs was doing something that caused water with fecal coliform to get to a slope (and possibly other areas), which it ran down and into a river" and that it improperly left it "up to Dragon Springs, the [DEC], and the EPA to figure out the rest." Appellee's Br. at 16–17.

But that's enough. Plaintiffs identified exactly where the Fecal Coliform was escaping the Property, thereby providing sufficient information to allow Dragon Springs "to identify its own violations and bring itself into compliance voluntarily, thus making a costly lawsuit unnecessary." *Catskill*, 273 F.3d at 488. That's the purpose of the notice requirement. *Id.; see also Atlantic States Legal Foundation, Inc. v. Stroh Die Casting Co.*, 116 F.3d 814, 819 (7th Cir. 1997) ("In practical terms, the notice must be sufficiently specific to inform the alleged violator about what it is doing wrong, so that it will know what corrective actions will avert a lawsuit."); *id.* at 820 ("The key to notice is to give the accused company the opportunity to correct the problem.").

32

## CONCLUSION

Under the CWA, the pre-suit notice required before a citizen-initiated enforcement action must reasonably inform a defendant of the basis of a plaintiff's claims and include the information set forth in 40 C.F.R. § 135.3(a). We conclude that the notice requirement is not jurisdictional, and, in any event, the NOI here met the § 135.3(a) standard.

For these reasons, we **VACATE** the district court's order granting Dragon Springs' motion to dismiss and **REMAND** for further proceedings consistent with this opinion.